325 So.2d 290 (1975)
Eve Ardoin, wife of William A. LeBOUEF
v.
William A. LeBOUEF.
No. 6815.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1975.
*291 Henican, James & Cleveland, Carl W. Cleveland, New Orleans, for plaintiff-appellee and appellant.
Reuter & Reuter, Arthur C. Reuter, Jr., New Orleans, for defendant-appellee and appellant.
Before LEMMON, BOUTALL and MORIAL, JJ.
LEMMON, Judge.
This appeal involves issues as to child custody, support and visitation privileges.
Mr. and Mrs. William LeBouef were divorced in August, 1973. The judgment also granted Mrs. LeBouef the custody of their two minor children, Elizabeth and Joseph, who were then 12 and 11 years old respectively, and reserved her right to child support. Mrs. LeBouef remarried the next month and became Mrs. Ronald Brechtel.
In April, 1974, Mrs. Brechtel filed a rule for child support, claiming she and Mr. LeBouef had been unable to amicably agree as to a reasonable amount. Mr. LeBouef answered and also filed a rule for custody of Elizabeth on the basis that the girl was living with him and was attending school near his home on Lake Pontchartrain and that she desired to attend high school in the same area during the next school term. He also pointed out that Joseph spent every weekend with him, usually from Friday afternoon to Monday morning.
At the trial of the rules Mrs. Brechtel testified: Her children resided with her after the separation in 1971 When she moved to the west bank upon her remarriage, *292 Elizabeth pleaded to remain in the same school until the end of that school year, and she consented to Elizabeth's living with her father under certain conditions, although she registered the girl in a west bank high school for the following year. She eventually objected to this arrangement when Mr. LeBouef left Elizabeth alone on many nights and indulged her with lavish spending and unlimited charge accounts, all to the child's detriment.
The trial court dismissed Mr. LeBouef's rule for custody and ordered him to pay support at the rate of $500.00 per month per child, plus school tuition and medical expenses. He subsequently appealed.
Shortly after the first judgment, Mr. LeBouef filed another rule seeking custody of Elizabeth, and both parties also filed separate rules to have the court fix a visitation schedule. Without receiving further evidence, the trial judge maintained Elizabeth's custody in Mrs. Brechtel and set visitation for the child with her father from 6:00 p.m. on Sundays to 6:00 p.m. on Fridays during the school term, plus one week during vacation. Mrs. Brechtel appealed from that judgment.
The two appeals, one by each party, are presently before us.
Custody and Visitation
Mr. LeBouef conceded at trial that Mrs. Brechtel was "a good wife" and "could provide a home for anybody". In brief filed in this court, he abandoned the appeal as to the issue of custody.
Mrs. Brechtel argues, however, that the judgment granting the father visitation privileges five of the seven days each week amounted to an award of divided custody, which is generally reprobated as detrimental to a child's best interest. See 92 A.L.R. 2d 695 (1963).
The only justification apparent in the record for the unusual visitation award was the child's expressed desire to continue her educational and social activities in the familiar neighborhood. This is insufficient justification.
A child's security and general welfare are shattered to some extent by any marital breakup. Understandably, this child was particularly apprehensive about a new neighborhood, a new school and new friends, in addition to her mother's marriage to a new husband. However, the judgment, which imposed full responsibility on the mother while denying her substantial opportunity to establish and exercise the necessary authority and understanding, served only to emphasize the confusion and insecurity.
The welfare of a child generally requires custody and control under undivided authority. Cormier v. Cormier, 193 La. 158, 190 So. 365 (1939). The differences in points of view in everyday decisions as to the proper way to rear a child will almost certainly result in a deleterious effect on the child's welfare. Newson v. Newson, 176 La. 694, 146 So. 472 (1933). Additionally, frequent shifting of the child from home to home exposes the child to changes in discipline and in daily habit, creating further confusion and insecurity and inviting breach of discipline and emotional instability.
Judicial recognition of the right of the non-custodial parent to express his affection through periodic visitation does not justify the granting of visitation privileges so extensive as to be equivalent to divided custody. Pierce v. Pierce, 213 La. 475, 35 So.2d 22 (1948). While short-time arrangements as to educational or social activities may reasonably be implemented to facilitate transition to new family and new surroundings, the best interest of the child generally demands that permanent custody and control be vested in one parent and that the visitation privileges accorded the other parent do not substantially affect the custodial parent's ability to discharge his or her responsibility.
*293 We further note that the objectionable visitation schedule also effectively results in separation of siblings, since Elizabeth is only in her mother's custody on weekends, at which time her brother visits with the father. The separation of children, though sometimes necessary, should be avoided by the court in custodial dispositions, when family solidarity can reasonably be maintained. Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969).
We conclude that the unusual visitation privileges awarded in the present case are not justified by the circumstances established in this record and are not in the best interest of the child. We amend the judgment to allow the father overnight visitation privileges not to exceed two weekends per month during the school term and three full weeks during vacation, reserving to the parties the right to have a specific schedule set by the trial court within these limitations in the event of their inability to reach an agreement.
In respect to Mr. LeBouef's complaint of the trial judge's refusal to allow Elizabeth to testify, we note counsel's argument that the judge interviewed the girl and stated to both counsel that Elizabeth desired not to be forced to take sides, although she expressed a desire to attend the high school in her father's neighborhood.[1] Thus, the judge revealed the contents of the private interview prior to ruling on custody, and counsel does not suggest that the child's testimony was necessary to produce facts not otherwise established in the record. We find no abuse of discretion in the trial judge's refusal to subject the child to questioning about her preference as to custody, especially in view of Mr. LeBouef's abandonment of his appeal as to the issue of custody.
Child Support
Mr. LeBouef testified that he would pay whatever amount of support the court awarded, and the evidence unquestionably established his ability to pay the amount the court did award. The principal disputed issue is whether the evidence established that the amount awarded was necessary to maintain the children according to the standard of living they enjoyed while living as a family unit.[2]
The record contains no evidence as to an itemized amount which would be required to maintain the children at this standard.[3] Of equal importance, the record does not show the children's standard of living (for comparison purposes) with the mother and stepfather prior to the award of child support.[4]
Our impression from the record is that Mr. LeBouef is willing to supply his children with the amount of money awarded. He argues, however, that this amount is not necessary for the maintenance of his children, and he apparently wants to pay *294 his former wife only the minimum cost of necessary maintenance and to furnish gifts and luxuries directly to them through charge accounts or other procedures.
One of the essential elements of custody is the management of the children's expenditures. A custodial parent's authority could be completely undermined, if any substantial aspect of that authority is controlled by the other parent.[5] Therefore, the funds necessary to support the children must be channeled through the custodial parent, although the other parent of course may maintain some direct financial communication through appropriate gifts and the like.
Nevertheless, because of the lack of evidence previously discussed, we are unable to determine the amount necessary to maintain the children according to the standard outlined in the Lamothe case and the cases cited therein. Although the record established Mr. LeBoeuf's ability to pay the amount awarded, it is necessary for us to remand the case for additional evidence as to whether this amount is needed to maintain the children according to the pertinent standard.
Furthermore, Mr. LeBouef, arguing that both the father and mother have the obligation of supporting their children under C.C. art. 227, urges the trial judge erred in excluding evidence of Mrs. Brechtel's present husband's income.
The mother's ability to furnish support must be taken into consideration in determining the father's obligation to contribute to the total amount found necessary to support and maintain children. C.C. art. 231; Marcus v. Burnett, La., 282 So.2d 122 (1973). While Mrs. Brechtel's present husband has no legal obligation to support her children from a previous marriage, the court may consider the fact that she has married a good provider in determining whether or not the mother must furnish a portion of the amount necessary to support the children. Marcus v. Burnett, supra.[6]
We therefore conclude that the trial judge erred in excluding evidence bearing on Mrs. Brechtel's present ability to furnish a portion of the amount necessary for the support of the children in her custody. This evidence may be presented at the hearing upon remand.
Accordingly, the judgments of the trial court as to the two rules for custody are affirmed. The judgment on the rule to set visitation privileges is amended to permit overnight visitation, limited to two weekends per month during the school term and three full weeks during vacation. The judgment on the rule for child support is set aside, and the case is remanded for further proceedings on that rule consistent with this opinion. Until judgment is rendered after the hearing on remand, Mr. William LeBouef is ordered to continue paying child support at the rate of $500.00 per month per child, in addition to school tuition and medical expenses. All costs of this appeal are assessed against Mr. LeBouef.
Affirmed in part, amended and affirmed in part, set aside and remanded in part.
NOTES
[1] While counsel for Mr. LeBouef makes much over the impracticability of Elizabeth's living on the west bank and attending school in the Lake Pontchartrain area, his answer to the first rule indicated that Joseph was pursuing that exact procedure. There was no further reference to this, however, in testimony or later pleadings.
[2] When children have been reared in an affluent standard of living, they are entitled to support necessary to maintain them in similar circumstances if the supporting parent's income permits. Williams v. Barnette, 226 La. 635, 76 So.2d 912 (1954); Lamothe v. Lamothe, 262 So.2d 87 (La.App. 4th Cir. 1972).
[3] An itemized list of expenses in Mrs. Brechtel's pre-trial brief was characterized by Mr. LeBouef as outrageous, although he admitted that the children had always enjoyed an extraordinary lifestyle.
[4] Mr. LeBouef had paid alimony pendente lite and child support in the amount of $1,500.00 per month from the judgment of separation until the judgment of divorce. The record does not reveal, however, the amount of support he paid between the divorce and the trial of the rule for support nine months later.
[5] The record does not suggest Mr. LeBouef intended to undermine his former wife's custodial authority.
[6] Of course, this question in the case where the father is financially able to provide the full amount necessary for support and maintenance really amounts to a question of how much credit the father should receive against the full amount because of the mother's present ability to furnish a portion of that amount.