SARTAIN, Judge.
The common legal issue presented in the above captioned cause and two other suits is whether antenuptial obligations which have been reduced to judgment can stand as liens against and be satisfied out of immovable property acquired by the second community during the interim period between the decisions in United States Fidelity and Guaranty Co. v. Green[1] (1968) and Creech v. Capitol Mack, Inc.[2] (1973).
The facts are not in dispute and shall be related herein. However, separate judgments will be rendered in the companion suits.
*743 On September 3, 1969, Spencer R. Em-mons, Jr. and his wife, Roma Marie Hernandez Emmons, executed a special mortgage on Lot 371, Melrose Place Subdivision, in East Baton Rouge Parish, Louisiana, in favor of The Equitable Life Assurance Society of the United States of America (Equitable), to secure the payment of $17,000.00, plus interest.
The marriage between Spencer R. Em-mons and Roma Hernandez Emmons was judicially dissolved on November 6, 1971. Mrs. Emmons was awarded the care, custody and control of the couple’s minor children and Mr. Emmons was condemned to pay alimony and support for his former wife and minor children.
During the course of the marriage and thereafter numerous judgments were rendered against Mr. Emmons including two in favor of his former wife, (now Mrs. Ray Eichelberger) for accumulated arrearages of alimony and child support payments.
Mr. Emmons then married Jean P. Em-mons.
Shortly following the second marriage Equitable foreclosed on its mortgage covering Lot 371, which was seized and ordered sold at Sheriff’s sale on April 4, 1973. To convey clear title to any prospective purchaser at the Sheriff’s sale, the Clerk of Court, Ex-Officio Recorder of Mortgages, was directed to cancel from the mortgage records all inferior liens, including judicial mortgages recorded against Mr. Emmons insofar as the same affected Lot 371.
In the Sheriff’s sale on April 4, 1973, the property was purchased by Mrs. Jean P. Emmons, the second wife, for the sum of $22,110.00. The funds used by Mrs. Em-mons for the purchase price were obtained from Mr. Gerald Fryou.
On June 25, 1973, Mrs. Jean P. Emmons conveyed the property to Mr. Fryou.
Fryou, on October 15, 1973, executed a collateral mortgage in favor of any future holder or holder in the amount of $25,-000.00. This mortgage was payable at and given to State Bank & Trust Company (State Bank), Donaldsonville, Louisiana.
The first suit, Fryou v. Jean P. Emmons et al., La.App. (our No. 10,910) is an action for declaratory judgment wherein Fryou, under the authority of Green, seeks to have Lot 371, declared free and clear of those judgments rendered against Mr. Emmons prior to his marriage to Mrs. Jean P. Emmons. Fryou now appeals from an adverse judgment.
Shortly after the Fryou suit was filed, Fryou defaulted on the mortgage held by State Bank. The second suit was then instituted, viz, State Bank & Trust Company v. Fryou, La.App., 348 So.2d 745. This action is a foreclosure suit by ordinary process accompanied with a rule to have plaintiff’s mortgage declared superior to the judgments obtained by Mrs. Eichelberger. State Bank also relies upon the Green decision and now appeals from an adverse judgment.
In the meantime, Mrs. Eichelberger was proceeding to execute on her two judgments,[3] This prompted the third suit, the above captioned Emmons v. Emmons (our No. 11,160). State Bank intervened in an effort to halt the seizure and sale of Lot 371 on the grounds that the judgments sought to be executed upon were the antenuptial obligations of Mr. Emmons and did not attach to Lot 371 when it was purchased by Mrs. Jean P. Emmons, the second wife. Green, above. The trial judge declined to enjoin the sale but did grant a stay order in the proceedings and State Bank appeals suspensively.
With respect to the first suit, Fryou v. Emmons et al., above, the record in the State Bank suit reflects and counsel agree that Fryou no longer has an interest in the property. Lot 371 was seized by and sold to the bank in satisfaction of its judgment against him. The issues therein raised as between those litigants are now moot and this suit must be dismissed.
*744 With the dismissal of Fryou v. Emmons et a L, the legal issue has been substantially narrowed because in that suit all judgment creditors of Mr. Emmons were before the court. Now the only litigants in the remaining two suits are Mrs. Eichelberger and State Bank. Mrs. Eichelberger’s judgments represent accrued alimony and child support. We are no longer concerned with the rights of general mortgage creditors. Accordingly, our opinion herein is, therefore, limited to a consideration of alimony and child support judgments, vis a vis, immovable property of the second community.
In Green, an antenuptial judgment creditor of the husband attempted to satisfy his claim by garnishing the salary of the second wife and a joint bank account of the second community. Under consideration was the application of C.C. Art. 2403.[4] In rejecting the creditor’s right to proceed, the court stated:[5]
“ * * * Furthermore, we fail to appreciate the logic of the court’s reasoning that just because under the law of this state the husband is designated the head and master of the community and endowed with the power of alienating the community effects without the consent of his wife, that would give the creditors of the husband existing before his marriage any right to seize the effects of the community to satisfy these claims in face of the positive pronouncement of the Code that the ‘debts of both the husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects.’ ” (Emphasis ours)
Previous cases indicative of or holding to the contrary were overruled. Under similar facts, this court followed Green in X-L Finance Co. v. Courns[6] and the Supreme Court, with two justices dissenting, refused writs.[7]
However, Green was reversed in Creech v. Capitol Mack, Inc.[8] The court, at some length, by “resorting to a complete study of our Code, its sources and the evaluation of those sources, as well as our own case law,” stated:[9]
“We conclude that the wife’s interest in the community is imperfect ownership without use, and consists of certain acquired rights including suit for separation of the community, acceptance or renouncing of the community, and a full accounting upon dissolution of the community. As to third persons, her patrimony then consists of her separate property in perfect ownership and the imperfect ownership without use of one-half of the community with certain acquired rights. We further hold that the husband’s patrimony consists of his separate property and the community of acquets and gains. His use of the community property is restricted only by the express and specific legal requirements attaching to the contract of marriage. We thus finally conclude that since the community of gains is a part of the husband's patrimony, it is subject to creditor’s rights, Civil Code Articles 3182 and 3183, however, the husband must account for the enrichment of his separate estate by the discharge of antenup-tial debts upon dissolution of the community.” (Emphasis ours)
State Bank argues that its rights were acquired in 1973 during the reign of Green and that it was entitled to rely on that decision and that under the public records doctrine it should be declared the owner of Lot 371 free and clear of the judicial mortgages sought to be enforced by Mrs. Eichelberger.
State Bank’s contentions must be rejected. While judicial opinion will undoubtedly *745 vary as to the extent to which Green should be applied, as evidenced by our original decision in Fryou v. Emmons et al., its applicability as to antenuptial obligations for alimony and child support was determined prior to Fryou’s acquisition of the property.
The precise issue now before us was raised in White v. Klein.[10] In that case, as here, the judgment sought to be satisfied out of the assets of the second community was for antenuptial past due child support payments. There, we held that such payments are not “debts” within the meaning of C.C. Art. 2403. Further, their subsequent reduction to an executory judgment did not have the effect of changing their status as an obligation or duty imposed by law. In denying the husband’s writ application, the Supreme Court found “No error of law.”[11]
Accordingly, for the above reasons, the judgment of the district court is affirmed at appellant’s costs.
AFFIRMED.

. 252 La. 227, 210 So.2d 328 (1968).

. 287 So.2d 497 (La. 1973), rehearing denied Jan. 24, 1974.

. One judgment (May 4, 1971) in the amount of $1,585.00, and a second judgment (April 20, 1972) in the amount of $400.00.

. C.C. Art. 2403.
“In the same manner, the debts contracted during the marriage enter into the partnership or community óf gains, and must be acquitted out of the common fund, whilst the debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects.

. 210 So.2d 328, 331.

. 260 So.2d 751 (La.App. 1st Cir. 1972).

. 261 La. 1051, 262 So.2d 38 (1972).

. Note 2, above.

. 287 So.2d 497, 510.

. 263 So.2d 496 (La.App. 1st Cir. 1972).

. 262 La. 1097, 266 So.2d 223 (1972). The lone dissent was by Justice Barham who subsequently authored Creech v. Capitol Mack, Inc., note 2, above.