440 So.2d 182 (1983)
PAN AMERICAN IMPORT COMPANY, INC.
v.
Katherine Hebert, wife of/and Julius K. BUCK, and Janet Buck, wife of/and Jerry Verrette.
No. CA-0697.
Court of Appeal of Louisiana, Fourth Circuit.
October 6, 1983.
Rehearing Denied November 22, 1983.
*185 Mitchell J. Hoffman, Ann Wise, McCloskey, Dennery, Page & Hennesy, New Orleans, for plaintiff, appellee.
Patrick C. Kelley, New Orleans, for defendants, appellants.
Before WARD, GULOTTA and BYRNES, JJ.
WARD, Judge.
A brief description of these three actions is essential to understand the relationships of these parties and to answer the threshold question: what issues and judgments are being appealed? Undisputed evidence introduced in trial showed that Janet Buck Verrette, the daughter of Katherine and Julius Buck, was employed by Pan Am as a cashier from June, 1976, until August, 1977, when she was fired after Pan Am discovered that she had stolen $61,374.62.
In the first of three consolidated suits, Pan Am filed suit in June, 1978, to recover its loss from the theft, and it named as defendants, "Janet Buck, wife of/and Jerry Verrette". When filing the suit, Pan Am was obviously mistaken in identifying the defendants as husband and wife because Janet Buck and Jerry Verrette were not married until November, 1978, after suit had been filed. That suit was to recover $28,692.94, the amount lost after Pan Am had recovered $25,000 from its bonding company and $7,681.68 from some of its customers.
In answer to that suit, Jerry Verrette raised several exceptions and denied liability, principally because he and Janet were not married when the theft and conviction occurred. Pan Am amended its petition to allege that although Jerry and Janet Verrette were not married when the theft occurred, they were liable in solido for the losses. Motions for summary judgment were filed by both Pan Am and Jerry Verrette. The Trial Judge granted Pan Am's Motion for summary judgment against Janet Verrette for $26,142.92, but he denied Jerry Verrette's motion for summary judgment against Pan Am. The summary judgment against Janet Verrette was not appealed, and after it became executory in May, 1981, Pan Am instituted garnishment against Jerry Verrette's salary, seizing it as a community asset to satisfy Janet's separate debt to Pan Am. Jerry Verrette immediately asked for a temporary restraining order or an injunction to stop the garnishment of his wages. Neither was granted, and the Trial Judge permitted the garnishment to continue, but ordered the funds put into an escrow account until he decided Pan Am's claims against Jerry Verrette and its right to garnishment of his salary.
Jerry and Janet Verrette filed the second of these cases in July, 1981, and petitioned for a separation of their community property, alleging that Jerry Verrette's interest in the community property was being threatened by the conduct of Janet. Pan Am filed a petition of intervention and opposed the separation of the community; and this action was consolidated with Pan Am's earlier suit and set for trial.
After the consolidation, Pan Am filed a third suit in January, 1982, seeking a "Declaratory Judgment, Revocatory Action and/or Action in Declaration De Simulation", naming as defendants Janet's parents, Katherine and Julius Buck, and Janet and Jerry Verrette and contending that a house on LaMarque Street in New Orleans is owned either by Janet alone or by both Janet and Jerry Verrette, although the conveyance records show that the house is owned by Katherine and Julius Buck. Pan Am alleges that her parents are interposed parties and that the house was purchased with funds which Janet had stolen. Pan Am, therefore, asked that the title to the house be recorded in the name of Janet or in the name of Janet and Jerry Verrette. Pan Am seeks to have either Janet or both she and Jerry recognized as owners so that it can seize the house to satisfy its judgment against Janet. This suit was consolidated with the first two, and the three consolidated cases came to trial on June 16, 1982.
After a trial on the merits, in the first suit, the Trial Judge rejected Pan Am's *186 theft loss claims against Jerry Verrette, holding that the garnishment of Jerry Verrette's salary was a legitimate seizure of community property but only until the community was dissolved, and not afterward. In the second suit, he ordered a separation of the community, retroactive to the filing of the petition for separation. In the third suit, he held that the house on LaMarque Street is the separate property of Janet Verrette, and he ordered it recorded in her name.
Before considering questions of substantive law, we must first decide what judgments are on appeal. Janet and Jerry Verrette appealed only the judgment in the third suit where the Trial Judge held that the LaMarque Street property was the separate property of Janet. Pan Am filed an answer to the Verrette's appeal, but in its answer, it also seeks to have the judgments in the other two cases reversed and modified. The Verrettes claim that Pan Am cannot, through an answer in one case, appeal adverse judgments in the two other cases. On the other hand, Pan Am claims that because the three suits were consolidated for trial, they are consolidated for appeal, and that through its answer, it may seek modifications of those adverse judgments in the first and second suits.
In Reed v. Pittman, 257 La. 389, 242 So.2d 554 (1971) the Supreme Court considered whether an action taken in one suit would prevent a finding that another suit with which it was consolidated had been abandoned.
We are here concerned simply with the question of whether, when such separate suits are consolidated for trial, steps in the prosecution or defense of the consolidated proceedings may be regarded as taken not only in the principal suit but also in others consolidated for trial with it. We hold that they may.
In a more recent case, U.S. Fire Insurance Company v. Swann, 424 So.2d 240 (La. 1982), the Court held:
... that appeals are favored in the law and should be maintained unless a legal ground for dismissal is clearly shown.... Unless the ground urged for dismissal is free from doubt, the appeal should be maintained.
In the instant appeal, there is a serious doubt. All three cases were consolidated for trial, and, although there were three separate judgments, the Trial Judge's written "Reasons for Judgment" in the three suits was captioned with one title and filed in the record of one suit, not the one appealed, but rather the first Pan Am suit against Janet Buck and Jerry Verrette. Further, the matters are so intertwined that in their appeal of one case, the Verrettes designated the records in all three cases to be sent to this Court so that the issues raised could be more readily understood. We believe the principle of Reed stands for the proposition that cases consolidated for trial are to be considered as one, both for trial and appeal. Both Reed and Swann, supra, and the interest of justice dictate that the issues raised by the Verrettes and by Pan Am should be decided in this appeal.
Turning now to the first of these consolidated cases, Pan Am contends Jerry Verrette is liable in solido with Janet for her theft. The Trial Judge rendered judgment in favor of Jerry Verrette, and Pan Am asks that we reverse, arguing, first, that Jerry Verrette was a co-conspirator, second, that he "ratified" Janet's debt by helping her pay it, and, third, that he was unjustly enriched by the theft. We disagree, and we affirm the Trial Court for the following reasons.
The Trial Judge made a factual determination that Jerry Verrette did not conspire to commit the theft, and we have no reason to disturb his findings. Janet was the Pan Am employee, and she, not Jerry, pled guilty to criminal charges. She and Jerry were not married while she was stealing from Pan Am, and even if he knew that she was stealing, nothing in the record indicates that Jerry conspired with her to commit the theft.
Nor do we find merit in the argument that he "ratified" her debt. Janet's *187 obligation to Pan Am is her separate obligation. Jerry's assistance in paying it does not mean either that he ratified or assumed the debt or that he became a solidary obligor.
We also conclude that Pan Am cannot recover under a theory of unjust enrichment. To recover, there must be: 1) enrichment to one party; 2) impoverishment of the other; 3) a connection between those two elements; 4) no legal cause for the enrichment and impoverishment; and 5) no other remedy at law. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967).
Pan Am has not proven that there is a connection or that there is no other remedy in law. The connection that must be proven is the loss of a specific thing by one and receipt of it by another, or loss of a more or less certain sum by one and receipt of the money or substantially the same amount by another, so that one may fairly say that what is received or lost is one and the same thing, so that the connection may be said to be direct, not inconsequential or speculative.[1] In the instant case, proof that Janet gave Jerry expensive gifts or paid for expensive trips and lavish meals is insufficient to establish that Jerry Verrette was unjustly enriched by funds stolen from Pan Am. We also find Pan Am has adequate remedies in law, a matter we reserve for later discussion. We, therefore, reject Pan Am's claim that Jerry Verrette is liable in solido.
In the second case, Pan Am asks that we reverse the judgment of the Trial Court, in which he ordered a separation of property between Janet and Jerry Verrette. Pan Am argues that the petition for separation of property should have been denied as a fraud of its rights as a creditor because the separation terminates Pan Am's rights to garnish Jerry Verrette's salary. We agree, and we believe the Trial Judge erred when he granted a separation of the community.
Three Articles of the Civil Code are pertinent to our decision:
Art. 2374 Judgment of separation of property
When the interest of a spouse in a community property regime is threatened to be diminished by the fraud, fault, neglect, or incompetence of the other spouse, or by the disorder of the affairs of the other spouse, he may obtain a judgment decreeing separation of property.
Art. 2375 Effect of judgment
A judgment decreeing separation of property terminates the regime of community property retroactively to the day of the filing of the petition, without prejudice to rights validly acquired in the interim between filing of the petition and rendition of judgment.
Art. 2376 Rights of creditors
The creditors of a spouse, by intervention in the proceeding, may object to the separation of property or modification of their matrimonial regime as being in fraud of their rights. They also may sue to annul a judgment of separation of property within one year from the date of the rendition of the final judgment. After execution of the judgment, they may assert nullity only to the extent that they have been prejudiced.
When ordering a separation of the property, the Trial Judge discussed Article 2376, supra in his Reasons for Judgment:
[t]here is nothing fraudulent about Verrette trying to shield his income from a pre-nuptial creditor of his wife. There is utterly no deceit involved. He is attempting to exercise a right conferred by the Code which inevitably is prejudicial to the creditors of the spendthrift spouse. In fact the article is designed to prejudice creditors by placing beyond their reach income and property which would otherwise be available to satisfy their claim.
We disagree with this interpretation. We do not interpret "fraud" to mean either *188 "deceit", or "misrepresentation of the truth." If Article 2376 means creditors may intervene only when the petition for separation is deceitful, that is, when the parties have misrepresented the truth because they do not intend to separate the community, then the creditors' right to intervene is a hollow one because it would be virtually impossible to prove that when the parties filed their petition, they had no intention to separate the property after judgment was rendered. We do not give "fraud" such a limited meaning.
In the context in which the word is used, "fraud" is more synonymous with "bad faith"[2]. We believe "fraud" in this sense has been proven. The financial circumstances of the parties, the timing of the petition for separation, the unusual circumstances giving rise to this debtall indicate that the sole purpose of separation was to avoid payment of the debt to Pan Am. In sum, when the sole purpose of a petition to separate community property is admittedly to avoid payment of a pre-existing debt, we believe that the petitioners are in bad faith and that separation of the community will unfairly deprive creditors of their rights.
Nonetheless, Jerry Verrette argues that Janet's misappropriation of funds and her conviction occurred before their marriage and that he, a non-debtor spouse, should not be subjected to garnishment. He relies on the former community property law, in effect at the time of his marriage: community assets could be seized to satisfy the prenuptial debts of the husband but could not be seized to satisfy the prenuptial debts of the wife.
We believe the Legislature changed this when it made extensive changes in the community property laws by Act 709 of 1979. Article 2345, effective January, 1980, specifically provides that a separate obligation may be satisfied during the existence of a community property regime from community property, and it does not distinguish separate debts of the wife from separate debts of the husband. We believe the intent of the Legislature in enacting Act 709 was to eliminate legal differences between spouses by granting equal rights and imposing equal liabilities, and this intent is reflected in Article 2345. Further, when the Act is considered in its entirety, it is clearly meant to apply to those marriages before as well as those after its effective date. Spouses are bound by the current law rather than by the law at the time of their marriage.
The current law, La.C.C. Art. 2364, gives Mr. Verrette an action against Janet for reimbursement:
If community property has been used to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement upon termination of the community property regime for one-half of the amount or value that the property had at the time it was used.
This Article, like Article 2345, does not distinguish between husband and wife, and we believe it gives further support to our holding. Since the community property may be used to satisfy a spouse's separate debts, the spouses may settle their own financial struggles but not remove assets which are available to creditors.
Jerry Verrette also cites Bridgeman and Conway v. Korner Realty Co., 405 So.2d 344 (La.App. 4th Cir.1981) as support for his argument that the judgment of separation of property was correct. We do not believe Bridgeman supports his argument. When the legislature enacted the extensive changes in the community property law, the Acts provided that the changes would become effective January 1, 1980. The Acts further provided that couples living under the existing regime could adopt "a matrimonial regime of their choice" (either separate or community) before January 1, 1980, without court approval. Otherwise, the *189 marital regime would be a community property regime, and Court approval would be required to "modify or terminate a matrimonial regime." La.C.C. Art. 2329[3] Herein lies the distinction between Bridgeman and the instant case. The determinative issue of Bridgeman was whether a separation of property which would operate to deprive the creditor of a vested right would be allowed when the spouses, without Court approval, exercised their right before January, 1980, to elect a separate property regime. In the instant case, the Verrettes did not elect a separate regime before January 1, 1980; hence, court approval to change was required, and Pan Am, therefore, had a right to intervene and to prove that the separation would be in fraud of its rights. We perceive a vast difference and conclude that Bridgeman is not controlling of the instant case.
In sum, when Janet was cast in judgment for her debt to Pan Am, although it was her separate obligation, community property assets were available to satisfy her debt, and she and Jerry could not elect a separate regime without court approval. Further, Pan Am had a right to intervene in the suit to separate the property to prevent fraud of its rights under. Because we have determined that the separation of the property is "in fraud" of Pan Am's rights, we reverse the judgment granting a separation of property and allow the garnishment of Jerry Verrette's salary to continue.
The final issue in this appeal is the judgment which declared the LaMarque Street property to be the separate property of Janet Buck Verrette. The conveyance office records reflect that on July 22, 1977, Katherine and Julius Buck purchased the property from Mr. and Mrs. Knox. Pan Am alleges that although Mr. and Mrs. Buck are shown as the vendees, the true purchaser was Janet alone or Janet and Jerry Verrette jointly. Pan Am contends the down payment and some monthly mortgage payments came from funds which Janet was stealing from Pan Am. Pan Am claims that the present recordation of the property in the names of Mr. and Mrs. Buck is a sham, and Pan Am seeks to have the property placed in Janet's name, so that Pan Am may use its judgment against Janet to seize it, once the title and recordation reflect the true ownership of the property.
In their answer to Pan Am, Janet and Jerry Verrette stated:
Par.4 Janet and Jerry Verrette admit that they have resided at 3147 Lamarque Street, but show that they are not the owners of this property, nor have they ever been the owners of this property, and payments that are made on said property constitute rental payments. (emphasis added)
and
Par.14 That the defendant, PAN AMERICAN IMPORT COMPANY, INC., is obviously well aware of what the public records show in this matter and that said records show that Katherine and Julius Buck are the owners of certain property located at 3147 Lamarque Street, and although the depositions of both Katherine and Julius Buck have been taken in which they have stated that they are the owners of this property, that no counter letter exists between them and between Janet and Jerry Verrette....
When rejecting Janet and Jerry's argument, the Trial Judge wrote in his Reasons for Judgment:
I am convinced that the house at 3147 Lamarque Street belongs to Janet Buck and that title was placed in her parents' name fraudulently, as interposed parties. The Bucks' admit that they purchased the house with someone else's money. They acted neither like owners nor landlords in any way. While the money used in the down payment may have been delivered by [Jerry] Verrett, I do not believe he had the money for the down payment. Janet *190 on the other hand had ready access to Pan American's receipts. The conclusion is inescapable that Janet put up the money.
Judgment will be entered declaring the house the property of Janet Buck Verrette, without prejudice to the rights of Fidelity Homestead Association.
In this appeal, Janet and Jerry Verrette argue that the Trial Judge erred because Pan Am has failed to prove its case, that the LaMarque Street property belongs to Mr. and Mrs. Buck, or in the alternative, that it is the separate property of Jerry Verrette because he made the down payment.
Pan Am argues that the judgment declaring the LaMarque Street property to be Janet's separate property should be affirmed. Pan Am argues first that since the Bucks have dismissed their appeal, the appeal of Janet and Jerry Verrette should be dismissed because they are not parties aggrieved by the judgment and they do not stand to benefit by a modification of the judgment; second, that since Jerry has claimed that the house is his separate property for the first time on appeal, his claim cannot be considered; finally, that the factual determination by the Trial Court that the property is Janet's separate property and that the Bucks were interposed parties is a finding of fact that should be affirmed.
We agree with the arguments of Pan Am, and, therefore, we dismiss the appeal of Janet and Jerry Verrette and affirm the judgment of the Trial Court for these reasons.
In First Progressive Bank v. Verret, 357 So.2d 100 (La.App. 4th Cir.1978) this Court noted "the proper party to file the appeal is the aggrieved litigant," so the initial determination is whether either Janet or Jerry Verrette is aggrieved by the judgment rendered by the Trial Court.
A review of the record shows that 1) the purchase of the house occurred before the marriage of Mr. and Mrs. Verrette; 2) funds were given to Mr. and Mrs. Buck to make a down payment; 3) the Verrettes reside in the house; 4) the Verrettes make monthly payments on the note; 5) they characterize the payments as rent, but the Bucks do not show rental income; 6) the Bucks assign the I.R.S. interest deduction to the Verrettes. Considering these facts, we agree with the Trial Judge: Janet's parents were interposed parties.
We also conclude that Janet Verrette is not aggrieved by a judgment declaring her residence to be her separate property. It is difficult to understand how a party who is declared owner of the property is ever aggrieved, for even if the property is seized and sold to satisfy Janet's debt, she is not aggrieved, rather she benefits from the reduction of her liabilities. Her appeal must be dismissed.
The appeal of Jerry Verrette must also be dismissed. He is asserting his claim that the house is his separate property for the first time on appeal, and this Court cannot now consider that claim. Further, Jerry Verrette rejected ownership of the house in his original answer to Pan Am's petition. The law is clear that "on factual matters a party is bound by his pleadings..." State v. Ward, 314 So.2d 383 (La.App. 3rd Cir.1975) writ denied, 319 So.2d 440 (La.1975). Having stated in his answer that he is not the owner of the LaMarque Street property, he is not aggrieved by a judgment which vests title to property in Janet Verrette rather than Mr. and Mrs. Buck. Since Mr. and Mrs. Buck are the real parties at interest who may have been aggrieved by the judgment of the Trial Judge and since they have abandoned their appeal, we dismiss Janet and Jerry Verrette's appeal and affirm the judgment of the Trial Judge holding the LaMarque Street property is Janet Buck Verrette's separate property.
All costs of trial and this appeal will be assessed equally to Pan Am and to Mr. and Mrs. Verrette.
Affirmed in part.
Reversed in part.
NOTES
[1] For a full discussion of the issue, see "Unjustified Enrichment in the Civil Law and Louisiana Law", by Barry Nicholas, 36 Tul.L.Rev. 605, 37 Tul.L.Rev. 49, particularly p. 55.
[2] See Black's Law Dictionary, definition of "fraud". Admittedly, Black's defines fraud as "an intentional perversion of the truth...." But it goes further and states "bad faith" and "fraud" are synonymous, and also synonyms of dishonesty, infidelity, faithlessness, perfidy, unfairness, etc.
[3] Acts 921 of 1981 and 282 of 1982 gives the spouses the right to partition the community without court approval. We do not have to decide their applicability because it is clear a partition is effective as to third parties only when registered in the conveyance office, which was not done in the instant case.