638 So.2d 727 (1994)
Lena MONTET
v.
Barbara LYLES.
No. 93 CA 1724.
Court of Appeal of Louisiana, First Circuit.
June 24, 1994.
*728 Allen Pierson, Ponchatoula, for plaintiff-appellee.
Duncan S. Kemp, III, Hammond, for defendants-appellants Barbara and Larnel Lyles.
Before LOTTINGER, C.J., and CRAIN and LeBLANC, JJ.
*729 CRAIN, Judge.
Sometime prior to February, 1991, Barbara Montet Lyles and her husband Larnel Lyles prepared to construct a home in Tangipahoa Parish. Before construction commenced Lena Montet (Barbara Montet Lyles' aunt) and the Lyleses agreed that a bedroom and bath would be added to the plans of the house which was to be constructed by the Lyleses so that Mrs. Montet could move in with the Lyleses. Mrs. Montet was approximately 81 years old at the time and suffered from diabetes and a heart condition. Mrs. Montet advanced approximately $15,000 to the Lyleses to aid in the additional expenses in construction costs for the addition of the bedroom and bath for Mrs. Montet's use. Mrs. Montet moved from her apartment in Metairie into the Lyleses' new home in February, 1991. She additionally paid them approximately $300 per month for rent and living expenses.
Sometime in February, 1991, Mrs. Montet handed Mrs. Lyles a certificate of deposit (CD) in the sum of $30,000 issued in the names of Lena Montet or Barbara Lyles. What she told Mrs. Lyles at that moment is in dispute. Mrs. Montet had also placed two other similar CDs into the hands of Mrs. Montet's two nephews (brothers of Mrs. Lyles). In early June, 1991, Mrs. Lyles and Mrs. Montet had a disagreement regarding the cost of food needed for Mrs. Montet's special diet which was necessitated by her diabetic condition. On June 17, 1991, Mrs. Montet informed Mrs. Lyles that she was moving back to Metairie to live in an apartment complex where she had previously resided. Mrs. Lyles cashed in the CD on June 18, 1991. This was done without Mrs. Montet's consent. Mrs. Montet moved out of the Lyleses' residence on June 22, 1991. She thereafter instituted this suit against Barbara Montet Lyles and her husband Larnel Lyles for reimbursement of the sum represented by the certificate, as well as for other sums allegedly loaned to Mrs. Lyles. After a bench trial on the merits, judgment was rendered in favor of Mrs. Montet on the issue of the CD. She was further awarded attorney fees in the sum of $7,500 and damages in the sum of $10,000 for mental anguish.
Defendants have appealed alleging as error: (1) the trial court's failure to find that the alleged donation to Mrs. Lyles constituted a gift of a corporeal movable which had been manually delivered to Mrs. Lyles and was thus a valid donation; (2) the trial court's finding of fraud on the part of the Lyleses; (3) the award of damages for mental anguish; and (4) the award of attorney fees.

DONATION OF THE CERTIFICATE OF DEPOSIT
Defendants admit in brief that the CD at issue was an incorporeal movable subject to the requirements of La.C.C. art. 1536, requiring donation by authentic act, which defendants admit was not accomplished in this case. In order for La.C.C. art. 1536 to be applicable as to form defendants are apparently conceding that the certificate of deposit was not negotiable pursuant to former La.R.S. 10:3-104. They contend, however, that the CD was negotiated by Mrs. Lyles, the donee, thus converting the CD to a corporeal movable in the form of cash which was placed into the donee's possession. Thus, the donation was perfected pursuant to La. C.C. art. 1539.[1]
The CD was issued by Secor Bank in the names of Lena M. Montet or Barbara M. Lyles in the sum of $30,000 at the request of Mrs. Montet. It is undisputed that the money used to obtain the CD was solely that of Mrs. Montet; Mrs. Montet's tax identification number appeared on the CD; and she alone paid taxes on the interest generated by the CD.
If we assume, as defendants concede, that the CD was not negotiable and that La.C.C. art. 1536 controls as to form, it is uncontested that there was no transfer of the CD by authentic act. Thus, there is no valid donation of the CD as to form.
*730 Even a donation inter vivos by manual gift requires the simultaneous occurrence of the donor's intent to give and actual possession by delivery. Adams v. Security Insurance Co. of Hartford, 533 So.2d 140 (La.App. 1st Cir.1988), reversed on other grounds, 543 So.2d 480 (La.1989). Consequently, receipt of the cash by Mrs. Lyles converting the CD still must be accompanied by an intent to donate the cash by Mrs. Montet in order for a manual gift to be accomplished. The donee bears the burden of proving donative intent and such proof must be strong and convincing. Further, donative intent is a factual issue. Succession of Serio, 597 So.2d 91 (La.App. 4th Cir.), writ denied, 600 So.2d 677 (La.1992).
The trial court found there was no donative intent on the part of Mrs. Montet. In written reasons for judgment the trial court stated that Mrs. Montet placed the certificate into Mrs. Lyles' hands for safekeeping. She specifically asked Mrs. Lyles to hold the CD until Mrs. Montet's death because Mrs. Montet "lived off" the monthly interest generated by the CD. Because there was no donative intent regarding the CD, the subsequent withdrawal of the funds by Mrs. Lyles did not effect a manual donation of the funds represented by the CD. Mrs. Lyles' actions in obtaining the funds were found by the trial court to be fraudulent conversion of the funds.
Even were we to assume the CD was negotiable and its transfer was valid as to form pursuant to the former Commercial Law, the Commercial Law is controlling only as to form. The substantive rules of the Civil Code affecting the validity of a donation are still applicable. Succession of Jones, 505 So.2d 841 (La.App. 2d Cir.1987). Our evaluation of the record as well as the trial court's factual findings indicate Mrs. Montet did not intend during her lifetime to donate the CD to Mrs. Lyles. She intended the funds to be transferred to Mrs. Lyles upon Mrs. Montet's death. The inclusion of Mrs. Lyles name on the CD was done solely as a favor to Mrs. Lyles in order to keep the CD out of her estate upon Mrs. Montet's death. Thus, even if valid as to form, since there was no donative intent there was no donation inter vivos of the CD or of the funds received after Mrs. Lyles cashed in the CD. This assignment is without merit.

FRAUD, ATTORNEY FEES AND DAMAGES
In the remaining assignments of error defendants argue that plaintiffs did not sufficiently allege with particularity the facts constituting the fraud allegedly practiced by defendants. Thus the trial court's finding of fraud was based on inadequately alleged facts. They also contend that plaintiffs did not "allege" or prove mental anguish and attorney fees, thus the trial court's award of damages and attorney fees was erroneous.
At the outset we note that defendants do not contest whether La.C.C. arts. 1953-1958 are applicable in the instant case. The trial court found defendants conduct to be fraudulent pursuant to La.C.C. art. 1957. These articles are contained in Section 2 of Chapter 4 (Vices of Consent) of Title IV (Conventional Obligations) of the Civil Code. Consent to a conventional obligation may be vitiated by fraud. La.C.C. art. 1948. The conventional obligation here would have to be a contract of deposit between Mrs. Montet and Mrs. Lyles.
"Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent." La. C.C. art. 1955. Fraud must be proved by a preponderance of the evidence, both direct and circumstantial. La.C.C. art. 1957. The party against whom rescission is granted because of fraud is liable for damages and attorney fees. La.C.C. art. 1958.
In applying articles 1953 through 1958 we assume the trial court found Mrs. Montet and Mrs. Lyles entered into a contract of deposit and impliedly rescinded the contract because Mrs. Montet's consent was vitiated due to fraudulent conduct of Mrs. Lyles in inducing Mrs. Montet to deposit the CD with Mrs. Lyles for safekeeping. Implicitly, the trial court must have found that had Mrs. Montet known that Mrs. Lyles had no intention to merely be a depositary of the CD, but rather intended to use it as her own, she *731 would not have placed it in Mrs. Lyles' hands. Had the trial court not found fraudulently induced consent, but instead found a tortious conversion of a deposit pursuant to La.C.C. art. 2940, plaintiff would not have been entitled to attorney fees. See Holland v. First National Bank of Crowley, 398 So.2d 186 (La.App. 3d Cir.1981).
In written reasons for judgment the trial court stated that Mrs. Montet's actions constituted theft under La.R.S. 14:67. He further stated:
"In the present case the moneys represented by the certificate of deposit belonged to Lena Montet. She placed the certificate of deposit for safe keeping with her niece with the specific instructions not to cash it in until after her death. Barbara Lyles cashed in the certificate of deposit, converted the cash to her own use, and has made no effort to repay Lena Montet any portion of the money. Under these circumstances she clearly misrepresented to the bank that she was the owner of the C.D. when she cashed it with the intention to obtain the moneys in question and not pay them over to her aunt Lena Montet. Under these circumstances fraud has been proved by a clear preponderance of the evidence by both direct and circumstantial evidence. (L.S.A. C.C. Art. 1957)."
The trial court obviously did not believe Mrs. Lyles' assertions that her aunt intended to irrevocably donate the CD to her during her lifetime. Having explicitly found that Mrs. Montet merely placed the CD in Mrs. Lyles' hands for safekeeping, that Mrs. Lyles converted the funds to her own use, and that she misrepresented the status of her ownership to the bank when cashing in the CD, the trial court obviously found that all such conduct constituted fraud on the part of Mrs. Lyles. The fraudulent conduct was alleged with particularity, and as stated by the trial court, was proved "by a clear preponderance of the evidence both direct and circumstantial."
In the third and fourth assignments of error defendants merely allege that plaintiff neither alleged nor proved mental anguish or attorney fees. Thus, plaintiff cannot recover on a cause of action not alleged, nor prove matters not alleged.
Defendants complaint is that attorney fees and damages for mental anguish were not prayed for, alleged in the petition nor proved at trial. They do not contend that awards for attorney fees and nonpecuniary damages would not be recoverable otherwise.
La.C.C.P. art. 861 requires that when special damages are claimed, they must be alleged. However, a final judgment "shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief." La.C.C.P. art. 862. "[W]hen the party's failure to request a particular form of relief, and the party's trial conduct, improperly and substantially prejudice its adversary's presentation of a defense, it is not entitled to relief under this rule." T.L. James & Co., Inc. v. Kenner Landing Inc., 562 So.2d 914, 915 (La.1990). The goal of the rule of article 862 is "to enable all litigants to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." Id. at 918.
Plaintiff here specifically alleged fraud. Once fraud was alleged it followed legally that if proved, attorney fees and damages were recoverable. La.C.C. art. 1958; See Mix v. Mougeot, 446 So.2d 1352 (La.App. 1st Cir.1984). Consequently, the inadequacy of the pleading did not substantially prejudice defendants or hinder them from realistically appraising their case, or hinder them in arriving at litigation as well as settlement strategies.
As to the sums awarded for attorney fees, the trial court is vested with great discretion in arriving at an award of attorney fees. The exercise of this discretion will not be reversed on appeal without a showing of clear abuse of discretion. Dornier v. Live Oak Arabians, Inc., 602 So.2d 743 (La.App. 1st Cir.), writ denied, 608 So.2d 177 (La. 1992). The trial court's award of $7,500 for attorney fees was reasonable in light of the fact that plaintiff's counsel conducted discovery and represented his client at a full trial on the merits at which plaintiff was successful in obtaining relief. In assessing general *732 damages in the sum of $10,000, the trial court took into account plaintiff's advanced age and precarious health, including an advanced stage of heart disease which requires the wearing of a pacemaker. She needed the interest income generated from this CD to make ends meet and was obviously very distressed that a beloved niece, whom she financially assisted in constructing a new home, would intentionally convert money placed in her safekeeping in order to permanently deprive her aunt of the money. Based on the facts revealed in the record we find no abuse of the vast discretion afforded the trial court in assessing general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). These assignments are without merit. The judgment of the trial court is affirmed. Costs of this appeal are assessed against defendants.
AFFIRMED.
NOTES
[1] La.C.C. art. 1539 provides:

"The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality."