698 So.2d 746 (1997)
Lori M. BAGWELL, Plaintiff-Appellee,
v.
Billy M. BAGWELL, Defendant-Appellant.
No. 29756-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1997.
Paul Henry Kidd, Jr., Monroe, for Defendant-Appellant.
Michael C. Bowers, Monroe, for Plaintiff-Appellee Lori M. Bagwell.
Charles Kincade, Monroe, for Plaintiff-Appellee Aubrey McEacharn.
Before MARVIN, C.J., and STEWART and PEATROSS, JJ.
MARVIN, Chief Judge.
In this action instituted by summary process to increase and to make executory past due child support ($1,487) against the mother, obligor-ex-spouse, and her husband [Aubrey McEacharn], whom she married after her divorce from plaintiff, the father, Billy Bagwell, domiciliary parent and obligee-ex-spouse, appeals the trial court's denial of his demands against McEacharn, stepfather of the two Bagwell children.
The judgment appealed essentially grants the father's demands, including demands for attorney fees and a wage assignment, against the mother, but "finds, as a matter of law, that [McEacharn] cannot be legally held liable and/or garnished [sic] for the alimentary child support obligation of his wife...." The trial court's judgment "finding," above quoted, impliedly sustains the exception of no cause of action filed by McEacharn, the stepfather.
Bagwell contends on appeal that this court should "rule" and "declare" that Mr. and Mrs. McEacharn are solidarily obligated for the past due support and for all child support *747 accrued during the existence of the community property regime existing between them. Alleging that he and his wife separated in February 1996, and that he instituted a divorce action against his wife on July 31, 1996, after Bagwell instituted on June 18, 1996, this summary proceeding to enforce the child support obligation against him and his wife, McEacharn asserts on appeal that while the community estate that existed between him and his wife "may" be obligated for the "roughly six-month period" they lived together, the father's "pursuit" of him is "legally and strategically misguided."
Further compounding the difficulty of our appellate review and resolution of this case is the fact that we have no transcript of the hearing below, only the trial court's adopted "Finding of Facts" submitted by counsel for the appellant Bagwell and the divorce and child support pleadings and judgments.
On this record, we amend, affirm and remand.

DISCUSSION
The pleadings in the record and adopted facts tell us when the Bagwells were married (November 16, 1990); when their two children were born (1991 and 1992); and when they were divorced (August 16, 1994, on petition filed December 15, 1993). We are also told the amount of the child support the mother was ordered to pay after the divorce ($170 per month) and the amount of the arrearage ($1,487), and that "after her divorce, [on some unspecified date the mother] married ... Mr.... McEacharn."
The child support judgment in the record, signed August 31, 1995, effective July 17, 1995, orders only the mother and not McEacharn to pay child support. McEacharn's exception of no cause of action to Bagwell's 1996 rule for arrearages asserts that fact. McEacharn's exception also contains these statements, which would require the taking of evidence [a procedure not available under the exception of no cause of action]: That McEacharn "has been physically separated from his [wife] since February 1996;" that he filed for a divorce on July 31, 1996, and that "all wages earned by [him] subsequent to that date will be [his] separate property and unavailable for satisfaction of a community obligation."
Bagwell argues on appeal that the trial court "should have" made the child support arrearage executory and should have ordered a wage assignment against both spouses, but apparently agrees that McEacharn's liability for stepchildren support should be "limited to the amount of child support that existed prior to July 31, 1996, the purported date of the filing of the divorce petition [the "fact" alleged by McEacharn in his exception of no cause of action]." (Our brackets.)
Based on the scant record, pleadings and briefs of the litigants, we are unable to determine how long the McEacharns had been married before separating in February 1996. However, the transcript of the hearing on the original rule for child support, heard on August 31, 1995, indicates, through Mrs. McEacharn's testimony, that they had physically separated one week before, on August 24, 1995. We may infer from this information that they had been married at least 11 months by the time of the hearing on the arrearage.
The statutory authority to order a compulsory income assignment clearly applies only to those persons who have been ordered to pay child support. La. R.S. 46:236.3. Relying on La. C.C. arts. 2362 and 2345, Bagwell attempts to enforce the child support obligation against Mr. as well as Mrs. McEacharn, and to place Mr. McEacharn solidarily in the same legal posture as his wife. We find that the law is not quite as broad as Bagwell contends.
La. C.C. arts. 2362 and 2345 respectively declare that an alimentary [support] obligation imposed by law on a spouse is a community obligation that may be satisfied during the community property regime from community property and from the separate property of the spouse who incurred the obligation. (Our emphasis.) See also Pan American Import Co., Inc. v. Buck, 440 So.2d 182 (La.App. 4th Cir.1983), reversed on other grounds, 452 So.2d 1167 (La.1984); Creech v. Capitol Mack, Inc., 287 So.2d 497 (La.1973): Compare Connell v. Connell, 331 So.2d 4 (La.1976), J. Tate concurring, which *748 concerned the second wife's claim that, upon termination of the community estate existing between her and her husband, their community estate should be reimbursed by her husband's separate estate for the amount of the support obligation paid with that community's funds by her husband during the existence of the community regime between him and his second wife to his first wife and children.
Also pertinent is La. C.C.P. art. 735 which states in part that either spouse is a proper party defendant, during the existence of the community, to enforce an obligation against community property.
Fathers and mothers become individually and thus, solidarily, obligated for child support because they are deemed to contract with each other to support, maintain and educate their children. La. C.C. art. 227. La. C.C. art. 3506 defines children as "those persons born of the marriage, those adopted, and those whose filiation to the parent has been established in the manner provided by law[.]" A biological or adoptive relationship gives rise to the support obligation of Art. 227. A solidary obligation from an obligor's perspective is one for which each obligor is liable for the whole performance. La. C.C art. 1794.
We conclude that a stepparent is not personally, or solidarily, obligated with his or her spouse to support that spouse's children born before his or her marriage to the spouse who is the blood or adoptive parent of the children. 44 La. Law Rev. 1753 (1984); LeBouef v. LeBouef, 325 So.2d 290, 294 (La.App. 4th Cir.1975). The stepparent's income may be considered in determining the amount of support the legal parent of the child must pay, but only to the extent that the income is used directly to reduce the actual expenses of the payor parent. La. R.S. 9:315(6)(c).
Notwithstanding that a stepparent is not solidarily obligated with his or her spouse for the support of his or her spouse's child of a prior marriage, this conclusion does not totally immunize the stepparent's community property from all derivative liability against the enforcement of the child support obligation of his or her spouse. The support obligation owed to his or her children by the spouse of the stepparent affects the community of acquets and gains between that spouse and the stepparent. See La. C.C. arts. 2345 and 2362 and La. C.C.P. art. 735 and cases cited supra. These authorities do not otherwise make the stepparent solidarily liable with the spouse to support the children of that spouse, as Bagwell would have us declare in this appeal.
Mrs. McEacharn's patrimony consists of any separate property she may have and her share of the community of acquets and gains. Generally, her entire patrimony is subject to seizure for enforcement by her creditors. La. C.C. art. 2345. Emmons v. Emmons, 348 So.2d 742, 744 (La.App. 1st Cir.1977). Mrs. McEacharn's patrimony includes her undivided one-half interest the community estate existing between her and Mr. McEacharn. La. C.C. art. 2338.
Agreeing or declaring that the arrearage in child support owed by Ms. McEacharn is an obligation which may be enforced against the totality of the McEacharn community and not just against her one-half, does not create a personal obligation owed by the stepfather, Mr. McEacharn, to the stepchildren. McEacharn's share, like his wife's share, of the community property is subject to execution to satisfy her personal support obligation. La. C.C. art. 2345; Pan American Import Co., Inc. v. Buck, supra; Creech v. Capitol Mack, supra.
Notwithstanding that the totality of the McEacharn community property may be attached or seized to satisfy Mrs. McEacharn's support obligation, the trial court's implied rejection of Bagwell's demand to have McEacharn declared solidarily liable with Mrs. McEacharn was proper. Because McEacharn has not been ordered to pay child support to his stepchildren, he cannot be held in contempt of court for lack of payment. La. C.C.P. art. 224. Neither should a compulsory income assignment be ordered against him for past due support owed the Bagwell children, as no stepchildren support order has been rendered against him. See La. R.S. 46:236.3.
*749 We make no finding as to what McEacharn community property Mr. Bagwell may subject to execution to satisfy the judgment rendered against Mrs. McEacharn for past due child support or what wages may be garnished in the event the community continues to exist. La. C.C.P. art. 2252. The propriety of any measures to enforce the judgment against Mrs. McEacharn from the McEacharn community property may be determined when execution is sought.

ATTORNEYS FEES
Mr. Bagwell complains that the trial court's award of $350 in attorneys fees is inadequate. He maintains that the record, testimony and the hearing establish the amount of time and effort that went into the litigation.
A trial judge has great discretion in arriving at the amount to be awarded for attorney's fees. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983); Montet v. Lyles, 93-1724 (La.App. 1st Cir. 6/24/94), 638 So.2d 727, 731, writ denied. The exercise of this discretion will not be reversed on appeal without a showing of clear abuse of discretion. Burford v. Burford, 95 2318 (La.App. 1st Cir. 6/28/96) 677 So.2d 722; Montet, 638 So.2d at 731.
We recognize there is no requirement that the trial court hear evidence concerning the time spent or the hourly rates charged to make an award of attorney's fees since the record will reflect much of the services rendered. Burford v. Burford, 95 2318 (La.App. 1st Cir. 6/28/96) 677 So.2d 722, 725; In the Matter of Andras, 410 So.2d 328, 331 (La. App. 4th Cir. 1982). However, the record in this case contains no transcript of the testimony, and does not provide any indication of the length of time consumed by the hearing. Nor can we determine from a review of the record the degree of effort expended by counsel for Bagwell in the rule to accrue the arrearage or the time required to prepare for the rule.
On this record, we cannot say the trial court abused its discretion in awarding $350 attorneys fees against Mrs. McEacharn, who did not appeal.

DECREE
That part of the trial court judgment impliedly sustaining McEacharn's exception of no cause of action is amended in these respects: We notice and sustain the exception of no right of action against Bagwell's demands that McEacharn be declared personally and solidarily liable with Mrs. McEacharn for past due or current child support. Likewise on this record, which indicates that the McEacharn community may no longer be in existence, we notice and sustain the exception of no right of action against Bagwell's demands that a wage assignment of McEacharn's wages be ordered. We allow Bagwell 20 days from the date this opinion becomes final to amend his petition to state a right of action, if possible, in these respects. Otherwise, and in default of an amendment, those demands shall be dismissed by the trial court after remand.
We affirm that part of the trial court judgment rejecting solidarity, contempt and attorney fee demands against McEacharn, reserving to Bagwell his rights to execute the judgment against Mrs. McEacharn, for current or past due child support, against the totality of the McEacharn community property in accord with law. We also affirm the award of $350 in attorneys fees. Costs of this appeal are assessed to equally to Bagwell and McEacharn.
As amended, the judgment is affirmed, and the matter is remanded.