HAMITER, Justice.
 

 These suits arose out of a dispute over the ownership of a 29% interest in an overriding royalty granted in connection with the execution of an oil and gas lease.
 

 In the first above named cause (which is a declaratory judgment action) Mrs. Susan Boagni Gardner prayed that she and others (hereafter called the Susan-Alice group) be declared the owners of the disputed interest. All opposing parties (referred to hereinafter as the Edward-Vincent group) were named as defendants, as were other interested persons.
 

 Thereafter, the owners and developers of such oil and gas lease instituted the second above named suit (a concursus proceeding) seeking to have determined the conflicting claims to the 29% interest as between the Susan-Alice group and the Edward-Vincent
 
 *33
 
 group, the latter professing to own all of the overriding royalty interest, including the disputed 29%. In connection with its concursus proceedings plaintiffs deposited in the registry of the court the funds accruing from production relating to the disputed interest.
 

 Because the parties and issues involved were identical the two suits were consolidated for trial and appeal.
 

 The district court, after trial of the merits, dismissed the declaratory judgment action. In the concursus proceeding it recognized the Edward-Vincent group as owners of the disputed overriding royalty interest, and it ordered that the funds on deposit be paid to them.
 

 On an appeal taken by the Susan-Alice group the judgments were reversed, the Court of Appeal recognizing the Susan-Alice group as the owners of the disputed 29% overriding royalty interest and ordering that they be paid the funds deposited in court. Whitehall Oil Company, Inc. et al. v. Eckart et al., La.App., 197 So.2d 664 and Gardner v. Boagni, Jr. et al., La.App., 197 So.2d 671. We granted certiorari on the application of the Edward-Vincent group. 250 La. 915, 199 So.2d 920.
 

 The claims of the two conflicting groups grow out of the following circumstances: On the death of Edward M. Boagni, Sr., which occurred some time prior to November 23, 1942, his four children became the owners in indivisión of certain properties owned by him. On the above mentioned date those heirs entered into a partition agreement whereby each acquired the ownership of certain designated parts of the properties.
 

 Further, with regard to mineral interests, the partition agreement provided: “In order that all of the parties hereto may participate to the extent hereafter set forth in the oil, gas and other mineral royalties which might accrue out of the production of any of such minerals from said lands, each of the parties hereto, as part of this agreement of partition, reserves in and to the lots hereby allotted to the others the oil, gas and mineral royalties equal to eleven per centum (11%) of one-eighth (⅛th) of all the oil, gas and other minerals produced from said lands either by the owner of the lands or of the mineral rights therein or by any lessee or others operating under any contract whatsoever. And in consideration of the transfer of certain rights to the parties hereto by Richard O. Eckart under another partition of even date herewith, all of the appearers herein transfer and assign unto the said Richard O. Eckart, his transferees and assigns, oil, gas and mineral royalty rights in and to the lots respectively allotted to them equal to seven per centum (7%) of one-eighth (⅛th) of all the oil, gas and other minerals produced from said lands; it being the intention hereof that the lot allotted to each of the said parties shall be
 
 *35
 
 subject to oil, gas and mineral royalty rights vested in the other parties and in the said Richard O. Eckart to the extent of a total of forty per centum (40%) thereof, leaving vested in the owner of each of said lots sixty per centum (60%) of all of such royalties to accrue under any lease or other contract affecting said land. The royalty rights so reserved by the said parties in and to the lots allotted to the others, including the rights of Richard O. Eckart, shall be and remain an obligation attached to said lands binding on any owner or owners thereof or of the mineral rights therein or lessees operating thereon, such royalties to be delivered or paid free of expense out of any oil, gas or other minerals produced from said property by any such owner or lessee, subject, however, to such proportionate deductions as may apply to the lessor’s royalty under any lease affecting the land, but the owner of the fee title to each of the said lots, as herein allotted, shall have the right to grant any lease or leases affecting his or her respective lands without the concurrence of the other royalty owners therein and any and all bonuses, rentals and other considerations (except royalties) paid for or in connection with any such lease or other contract shall be payable only to the owner of the lands so leased and the other parties as royalty owners shall not participate therein. It is further provided, however, that in the event any owner should grant a lease or leases affecting his or her land as herein allotted providing for the payment of royalties on oil, gas or other minerals in excess of one-eighth (⅛th) of the whole produced from said land then the other owners of the royalty rights therein reserved or transferred to them shall participate in such excess royalties in the same percentages herein set forth; and the total royalties in which said parties shall participate shall in no event be less than one-eighth (⅛th) of the whole of the oil, gas or other minerals produced from the land. * * * ”
 

 As a result of the partition agreement Edward M. Boagni, Jr. acquired, among other lands, a certain parcel designated as Lot G in St. Landry Parish containing approximately 520 acres. By a subsequent sale from Edward Boagni, Jr., a brother (Vincent Boagni) acquired the fee and part of the mineral interest in such lot.
 

 In December, 1958, the Edward, Jr. and Vincent Boagni interests (the Edward-Vincent group) executed a mineral lease on Lot G in favor of one Craft Thompson. The lease provided for the retention of a one-eighth royalty. Simultaneously, Thompson executed an “overriding royalty assignment” wherein he transferred to the lessors (the Edward-Vincent group) a stated percentage of his seven-eighths working interest. Eventually, production was obtained under the lease.
 

 The Edward-Vincent group contend that the overriding royalty was assigned to them
 
 *37
 
 in lieu of a cash bonus; and that, inasmuch as they were entitled under the agreement of partition to retain all bonuses, they were the owners of the entire proceeds therefrom. In this connection, they urge that a distinction should be made between overriding royalty, paid instead of a cash bonus, and the ordinary royalty as rental in connection with the lease.
 

 On the other hand the Susan-Alice group (comprised of the other heirs of Edward M. Boagni, Sr. and of Eckart) urge that the override transferred by Thompson is merely an excess royalty payment within the contemplation of the “excess royalty” provision of the partition agreement. They urge that the “(except royalties)” stipulation, when read in connection with the “excess royalty” provision, means that however royalties are taken they should be shared, in the percentage stated, by all of the royalty owners. And they assert that, since their collective portions total 29%, they are the owners of that interest in the override and are entitled to the entire amount of the proceeds deposited in the registry of the court.
 

 oln reaching his conclusion the trial judge sustained the factual and legal contentions of the Edward-Vincent group, he stating: “ * * * Prior to 1958 oil had been produced on Tract ‘B’ of the 1942 partition belonging to Mrs. Alice B. Heard in which the other heirs have participated as royalty owners on the basis of one-eighth. This tract was in what is known as the Opelousas Oil Field.
 

 “During the years 1958 and 1959 oil companies and lease brokers began obtaining leases in the area generally known as the Tidewater Block which was located some distance southeast of the Opelousas Oil Field.
 

 “At approximately this time, Mr. Edward Boagni, Jr., representing his wife and son, the owners of the minerals on Lot ‘G’ along with the heirs of Vincent Boagni, began negotiations looking toward the leasing of Lot ‘G’. He testified that from his investigation of leases in this area that the prevailing royalty was one-eighth of production. He further testified that he could have received from Mr. Craft Thompson a lease on Lot ‘G’ providing for $100 per acre bonus and one-eighth royalty. Negotiations continued and finally Mr. Boagni obtained a proposition under the terms of which the lessee obligated himself to drill a well within ninety days and the mineral owners accepted as a bonus an overriding royalty in lieu of the cash bonus. A lease was granted, and in a separate instrument the overriding royalty was provided for.
 

 “It is my opinion that there is a difference between a lease royalty, stipulated in the lease, and an overriding royalty out of the lessee’s seven-eighths interest taken as a bonus for the execution of the lease as
 
 *39
 
 applicable to the facts and the agreements in this case.
 

 “ * * * * * H=
 

 “The [partition] agreement specifically provides that the mineral owners may retain any and all bonuses, rentals and other consideration received for the execution of the lease, except royalties. The first of these words are ‘paid for or in connection with any such lease or other contract’, and those words relate to the preceding words ‘all bonuses, rentals or other consideration’. These are the things which may be kept by the mineral owners, and such ‘other considerations’ or delayed bonus may be taken in ‘other contracts’. This is what took place in the instant case.
 

 “The next pertinent language of the royalty reservation which supports my decision is ‘in the event any one grants a
 
 lease
 
 * * * providing for payment of royalty’, etc. This language in my opinion stipulates that the excess royalty in which the royalty owners may share, is such as is
 
 provided in the lease
 
 granted by the mineral owners. This shows that the parties contemplated that the retention of royalty interest was such as may be provided in the lease.
 

 “The overriding royalty interest involved in this suit was not provided in the lease, but was acquired specifically as a bonus or other consideration in a separate instrument.”
 

 The Court of Appeal approved the finding of the trial judge, it stating: “In exercising the executive power to grant the lease and in negotiating for the overriding royalties, Edward M. Boagni, Jr., acted honorably and openly and in accord with what he felt were the contractual rights of the Edward-Vincent parties he represented as agent. He could have accepted for them a cash bonus of $52,000 for the lease, and all parties concede that under the contract the Edward-Vincent group was entitled to keep entirely for themselves any such cash bonus. Instead, he negotiated for the overriding royalty interest at issue, which the lessee granted to the Edward-Vincent group in lieu of the $52,000 cash bonus. This overriding royalty interest was granted as a bonus or consideration for the granting of the lease by the Edward-Vincent group, which had the executive (exclusive leasing) power with regard to the tract leased.” But such court went on to adopt the contention of the Susan-Alice group that the act of partition excepted the payment of royalties from the bonus provision. It held that under the “(except royalties)” clause the executive (the party with the exclusive leasing power) could retain any bonus so long as it was not in the form of royalty, and that any royalty bonus received would have to be shared by all of the royalty owners according to their respective interests.
 

 We disagree with the construction placed on the contract by the Court of Ap
 
 *41
 
 peal and are of the opinion that the interpretation of the district court was correct. As we view the partition agreement, the "(except royalties)” clause merely had reference to the previously referred to one-eighth royalty reserved in a lease, not to an overriding royalty accepted in lieu of a cash bonus. And inasmuch as the override in the instant case was given and received (after negotiation) instead of a cash bonus, the owners of Lot G are entitled to the entirety thereof, all in accordance with the specific terms of the partition agreement.
 

 It is suggested by the Susan-Alice group that the executive power held by the owners of Lot G placed them in a fiduciary capacity with regard to all of the royalty owners and that it was therefore incumbent on the executive to obtain the best "deal” for them, which in this case would require that he accept all the consideration in the form of direct royalties in and under the lease rather than take some of the benefits (the bonus) as an override.
 

 In a similar situation the same argument was made by the royalty owner in Uzee v. Bollinger, La.App., 178 So.2d 508. In the opinion in that case the Court of Appeal analyzed prior decisions of this court, as well as those from the other Courts of Appeal touching on the subject, and it concluded that “ * * * Louisiana has rejected the doctrine of implied agency and fiduciary relationship as between the owner of royalty interest and the owner of the right to lease the land for mineral purposes.” We agree with that conclusion.
 

 In the instant case, under the partition agreement, all that the executive was required to do in negotiating a lease was to obtain not less than a one-eighth royalty for the benefit of the royalty owners. That was done. And having secured that advantage for the royalty owners, the executive was at liberty to negotiate, for his own benefit and his co-owners, for any additional bonuses, rentals, etc., whether he accepted them in the form of cash, overriding royalty or oil payments.
 

 For the reasons assigned the judgment of the Court of Appeal in each of the above named consolidated suits is reversed and set aside; and it is now ordered that the judgment of the district court in each of said cases be and is reinstated and made the judgment of this court. All costs in both suits are taxed to the mass on deposit in the registry of the court.
 

 McCALEB, J., dissents, being of the opinion that the judgment of the Court of Appeal is correct.
 

 SANDERS, J., dissents, being of the opinion the judgment of the Court of Appeal is correct. See Whitehall Oil Company v. Eckart, La.App., 197 So.2d 664.