550 So.2d 1378 (1989)
T.L. JAMES AND COMPANY, INC.
v.
KENNER LANDING, INC. and Francis P. Bonura.
No. 89-CA-261.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1989.
Writ Granted January 5, 1990.
*1379 Herman C. Hoffmann, Jr., Daris L. Burgess, Hurley and Hoffmann, New Orleans, for T.L. James and Co., Inc., plaintiff-appellant.
William J. Guste, Jr., Atty. Gen., Gary Keyser, Asst. Atty. Gen., David C. Kimmel, Asst. Atty. Gen., Baton Rouge, for intervenor-appellee.
Robert G. Creely, Michael F. Somoza, Amato & Creely, Gretna, for Kenner Landing, Inc. and Francis P. Bonura, defendants-appellees.
Before CHEHARDY, BOWES and GOTHARD, JJ.
BOWES, Judge.
Appellant T.L. James and Company, Inc. (hereinafter "James") appeals a judgment of the district court against Kenner Land Development, Inc. (hereinafter "Kenner Land"). The judgment refused to hold defendant Francis P. Bonura (hereinafter *1380 "Bonura") personally liable to James and further cast James liable in damages to the State of Louisiana, Department of Wildlife and Fisheries (hereinafter "the Department"), all as follows hereinafter. We affirm in part and annul in part.
On January 24, 1985, a dredging contract between James, identified therein as "Contractor", and "Kenner Land Development, Inc. and Francis P. Bonura, mailing address P.O. Box 416, Kenner, Louisiana"[1], identified therein as "Owner", was effected. James was to dredge approximately 300,000 cubic yards of material from the Mississippi River to place in the "Owner's pits" located at Mile 115.7 AHP ("above the head of the pass") at the river. According to the contract, the Owner would pay James $0.80 per cubic yard and would also "bear responsibility for, and the expense of, any permits, license, approvals and inspections required by any legal authority." Among other miscellaneous provisions, the contract provided:
An additional $0.075 per cubic yard will be charged on the quantity of material placed in the owner's pit, which amount will apply to the Promissory Note dated April 17, 1984 and signed by Francis P. Bonura.
The contract was signed:
KENNER LAND DEVELOPMENT, INC.
 BY: Francis P. Bonura
 Owner
 Francis P. Bonura
T.L. JAMES & COMPANY, INC.
 BY: L.P. Mathews, Vice President
 Contractor
 L.P. Mathews, Vice President
James dredged 296,242 cubic yards of sand and delivered it according to the contract, invoicing Kenner Land and Bonura for the sum of $259,211.75. The debt was never paid.
On November 4, 1985, James filed an original petition in this suit for recovery on a promissory note in the amount of $100,000, naming as defendants Bonura and Kenner Landing, Inc. (another company owned partially by Bonura) as debtors; the allegations thereof did not include the January 1985 contract but rather involved a previous debt due to James on a prior contract. In January, 1986, James filed a supplemental petition adding Kenner Land Development, Inc., as a defendant and in two subsequent supplemental petitions sought recovery of the debt due under the contract of January 24, 1985, as well as those sums of money which the Department of Wildlife and Fisheries claimed from James as unpaid royalties on the dredged material.
On September 11, 1987, the Department filed a petition of intervention alleging its entitlement to royalties for the material removed by James, as well as for a 30% penalty on said royalties. The intervention did not allege a permit, contract, or agreement for such payment from James, Bonura, or Kenner Land.
Following trial on the merits, the district court rendered judgment regarding the contract dated January 24, 1985, in favor of James and against Kenner Land in the amount of $245,320.00, plus interest, declining to find Bonura personally liable. Further, the court granted judgment in favor of the Department for $77,022.92, which sum represents the royalties claimed on the dredging performed in 1985, plus a 30% penalty. Regarding this portion of the judgment, the court stated:
"... said judgment being a judgment over [sic] against original plaintiff [James] for damages incurred by intervenor as a result of the judgment against him in the principal demand."
James has appealed alleging that:
1. The trial court erred in refusing to find that Francis P. Bonura was personally liable in solido with Kenner Land Development, Inc. under the January 24, 1985 dredging contract.
*1381 2. The trial court erred in refusing to find that Francis P. Bonura was personally liable in solido with Kenner Land Development, Inc. as Kenner Land Development was Bonura's "alter ego"i.e., that the corporate veil had been pierced.
3. The trial court erred in its finding that the State of Louisiana through the Department of Wildlife and Fisheries was entitled to royalties from James, plus a thirty percent penalty, when James had no permit, contract or agreement, either express or implied, with the Department of Wildlife and Fisheries for the payment of royalties, and the action for the collection of royalties was not instituted by the Department of Wildlife and Fisheries within one year from the date on which the last of the dredging was performed.
4. The trial court erred in its finding that the State of Louisiana through the Department of Wildlife and Fisheries was entitled to royalties, plus a thirty percent penalty, when James received absolutely no benefit from dredging the fill, there was no statutory or regulatory authorization either for the royalty or for the thirty percent penalty imposed thereon and the Department offered no evidence regarding the value of the sand fill material removed.
The amount of the judgment on the main demand has not been appealed.

LIABILITY OF BONURA
In his reasons for judgment, the trial judge found "that it was the intention of the parties that Francis P. Bonura was to act solely in a representative capacity and, in so doing, (Bonura) anticipated no personal liability from the dredging contracts [sic]." The court further stated:
An ambiguous picture of the relationship between the parties has emerged from the pleadings of counsel, testimony of the parties and witnesses, and the numerous exhibits introduced at the trial on this matter.... Further evidence of the ambiguity existing between the parties appeared when Francis P. Bonura signed as "owner" of Kenner Land and Development, Inc., on the preprinted, standardized dredging contract forms which were prepared by the plaintiff.
While it is not entirely clear precisely to which parties the court referred (James, Bonura, and/or Kenner Land), we interpret the judgment and reasons therefor as essentially finding an ambiguity in the contract itself that was drawn by James.
Three dredging contracts executed between March, 1983, through April, 1984, were introduced into evidence, in addition to the January 1985 agreement. Each contract designated "Kenner Land Development, Inc. and Francis P. Bonura" as "Owner" and each was signed exactly as was the 1985 contract, supra, at issue. The terms of the individual contracts were basically standard, differing in the amounts of material to be dredged, prices to be paid, etc. A fifth agreement between Kenner Land and James dated April 26, 1984, was also produced. This contract involved removal of sand from James by Kenner Land. This agreement did not mention Bonura in the body of the document nor include him as "owner"; it was, however, signed by Bonura, thusly:
AGREED AND ACCEPTED; KENNER LANDING, INC.
 BY: (Signed) Francis P. Bonura
 (Signed) Francis P. Bonura
 FRANCIS P. BONURA
 (Signed) Salvador J. Gulino
 SALVADOR J. GULINO
Bonura testified that he signed these five dredging contracts on behalf of his corporation, and never as an individual and such was his intention. Louis Mathews, a vice president of James, who executed the contracts on behalf of James, testified that James intended to bind Bonura personally on the contract of January 24, 1985, and that Bonura understood and agreed to this *1382 arrangement. Mathews testified that this decision to make Bonura personally liable was due to the fact that James was owed money from previous dealings with other corporations owned in part by Bonura. James introduced a letter dated April 26, 1984, addressed to Bonura, the (then) co-owner of Kenner Landing, Inc., which outlined an agreement to settle a pending lawsuit and which stated in pertinent part:
(1) Each of you on behalf of Kenner Landing has agreed to the entering of a Consent Judgment. [Emphasis supplied]
. . . . .
(2) You have agreed to execute two promissory notes, one made on behalf of Kenner Landing, Inc. and Francis P. Bonura, and the second on behalf of Kenner Landing, Inc. and Salvador J. Gulino. Both notes will be payable to T.L. James & Company, Inc.
. . . . .
(3) We have agreed to pump sand fill into the pit Mile 115.7 AHP,/left descending bank owned and operated by Mr. Francis Bonura at St. Charles Parish, Louisiana. For this, we will be paid $.95 per cubic yard, $.075 of which will be applied to the payment of the aforesaid $100,000 note of Kenner Landing, Inc. and Francis P. Bonura and $.075 of which will be applied to the note of Kenner Landing and Salvador J. Gulino.
The promissory note to which the letter referred was signed also twice by Bonura:
KENNER LANDING, INC.
 BY: (Signed) Francis P. Bonura
 (Signed) Francis P. Bonura
 FRANCIS P. BONURA
Bonura testified at trial that he did intend, in this transaction, to personally bind himself with his corporation. Even if Bonura had not made this admission, the letter and the note are a marked departure from the five dredging contracts mentioned above. While the letter of April 26, 1984, lends itself to some ambiguity, the double signature by Bonura under his own name and that of Kenner Landing, as well as the note in which Bonura agrees to be bound with Kenner Landing "jointly, severally, and in solido", evidence to this Court a definite intent on the part of Bonura to be personally bound.
In contrast, the five dredging agreements were signed identically, and yet James urges liability on the part of Bonura only in the final 1985 agreement. We are unable to detect a distinction in these five contracts insofar as the parties are concerned. The body of the dredging contracts all identify "Kenner Land Development, Inc. and Francis P. Bonura" conjunctively as the singular "Owner", and all are signed in exactly the same fashion. The singular reference to the two defendants as owner creates ambiguity so as to require us to resort to the codal articles and jurisprudence on interpretation of contracts.
The applicable civil code articles are:
Art. 2045. Determination of the intent of the parties
Interpretation of a contract is the determination of the common intent of the parties.
Art. 2046. No further interpretation when intent is clear
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.
Art. 2053. Nature of contract, equity, usages, conduct of the parties, and other contracts between same parties
A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.
Art. 2056. Standard-form contracts
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
*1383 Applying these rules of interpretation, we agree with the trial court that the contract of January 24, 1985, was indeed ambiguous insofar as it attempted to bind Bonura personally, along with Kenner Land. In light of the conduct of the parties before and after the contract, the other contracts and agreements between them, and the other terms of C.C. art. 2053, supra, we find no manifest error in the trial court's determination that the intent of the parties was, as Bonura contends, that he not be personally bound on the contract of January 24, 1985. In addition, under C.C. art. 2056, the contract must be construed against the party preparing it, here, indisputably James. Kenner Industries v. Sewell Plastics, 451 So.2d 557 (La.1984); Allen v. Burnett, 530 So.2d 1294 (La.App. 2 Cir.1988); Hoffpauir v. Time Ins. Co., 536 So.2d 699 (La.App. 3 Cir.1988).
Neither do we find support for the argument that Bonura disregarded the corporate entity so that the two were indistinguishablei.e., that Kenner Land was the alter ego of Bonura. James attempted to establish the alter ego theory by introducing at trial certain checks which Bonura had written on the corporate account to pay for certain debts, such as school tuition for his son. Mr. Robert Melvin, accountant for Bonura and his corporations, testified that the monies represented by such checks were actually reported, on the corporate income tax returns, as corporate payments to an officer. Bonura included these sums on his personal income tax return as income. Furthermore, Melvin testified that an average of 500 to 600 checks per year were written on the Kenner Land account. Of these, approximately 30 checks were introduced as payments on personal accounts.
The general rule is that corporations are distinct from their shareholders who, therefore, are not personally liable for the debts of the corporation. La.Civ. Code arts. 435, 437; La.R.S. 12:93(B); See Texas Industries, Inc. v. Dupuy and Dupuy Developers, Inc., 227 So.2d 265 (La.App.2d Cir.1969).
There are exceptions to this general rule. If a sole shareholder fails to conduct business on a corporate footing in such a manner that the corporation's identity cannot be distinguished from that of the shareholders, then the corporation can be determined to be the alter ego of the shareholder. In such instances, the shareholder is personally liable for the corporate debt. Keller v. Haas, 202 La. 486, 12 So.2d 238 (1943); see generally, Comment 38 Tul.L.
Rev. 738 (1964). A corporate identity may also be disregarded for equitable considerations. See Watson v. Big T Timber Co., 382 So.2d 258 (La.App.3d Cir.1980).
In order to determine whether Gaffney, Inc. and the other corporations' separate identities had been mingled, the court should look to a variety of indicators: failure to keep separate identities, such as lack of corporation formalities; undercapitalization; failure to keep separate accounting records, et cetera.
Entech Systems Corp. v. Gaffney, 466 So.2d 788 (La.App. 4 Cir.1985)
In Kingsman Enterprises v. Bakerfield Elec. Co., 339 So.2d 1280 (La.App. 1 Cir. 1976), the court also discussed the concept of piercing the corporate veil to hold an officer/shareholder personally liable. There the court stated:
. . . . .
the failure of a shareholder to adequately separate the corporation's identity from his own because of various factors may lead to fraud or deceit. Regardless of the basis for piercing the corporate veil, it is clear that the situation must be viewed with regard to the totality of circumstances in each case. However, it should be kept in mind that in Louisiana the concept of the separation of the corporate entity from its shareholders is the general rule and is firmly established. Because of the beneficial role of the corporate concept, this principle should be disregarded in only exceptional circumstances....
*1384 In Kingsman, the court found that transfers of funds between the majority shareholder and his corporation did not thereby destroy the separate corporate entity. In that case, there were separate bank accounts, separate bookkeeping, and separate accountants. While Bonura and Kenner Land shared the same accounts, there were separate accounts and separate books; additionally, the ratio of the checks in question to the total number of checks written, approximately 5%, does not compel us toward a conclusion that Bonura and Kenner Land were indistinguishable. Fraud was not alleged by James, nor was it proven at trial. When fraud or deceit is absent, other circumstances must be so strong as to clearly indicate that the corporation and shareholder operated as one. Kingsman, supra. The totality of circumstances do not support such a finding in the present case. Transactions between Bonura and Kenner Land were documented so as to maintain their separate identities. This assignment of error is without merit.
Liability of James for royalties to the State through the Department of Wildlife and Fisheries
The trial court did not discuss its rationale for awarding royalties and penalties to the Department. The language of the judgment quoted hereinabove leaves this court with questions as to which party the court actually cast in judgment on that item. However, we find that the law does not support an award of royalties and/or penalties against either James or Bonura and/or Kenner Land.
Mr. Harold Caywood, a field auditor for the Department, testified at trial that the sum in question was not a severance tax, but a royalty which the State sought to collect. He stated that LSA-R.S. 56:2011, et seq., enacted in 1986, authorizes the Department to require a permit and collect royalties and penalties on the dredging of fill sand or fill material.[2] These statutes were not in effect at the time the dredging in question was performed. Prior to the legislation, Caywood verified that the Department collected royalties by entering into agreements with the dredging companies. There were no contracts between the Department and either James or Kenner for the dredging of material at Mile 115.7, during the time period in question, according to Caywood. The Department audited the Bonura companies in 1987, and the audit reflected royalties due in the amount of $59,248.40 and penalties of 30%. Several notices had been sent to both James and Kenner Land, but no payment had been remitted.
An agreement between James and the Department, authorizing dredging at another point in the river, was introduced into *1385 evidence. In this "Sand, Gravel, or Fill Material Agreement", the Department assessed "a minimum royalty" for fill materials at $.20 per cubic yard, and provided for penalties on unpaid royalties at 10% per month. The permit or agreement was revocable by the Department under certain conditions. This particular agreement did not encompass either the time period or the geographical area of the river in question.
As a basis for assessing royalties without contract and without statutory authority under R.S. 56:2011, the Department claims that, as the State is the owner of the beds and bottoms of navigable water bodies[3], it has the right to recover damages under the Louisiana State Mineral Code. LSA-R.S. 31:13 states:
A landowner may recover damages for the unauthorized removal from his land by any means of minerals occurring naturally in a solid state.
This article does not create a contractual right of a landowner against one who removes minerals. A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. LSA-C.C. art. 1906. Rather, R.S. 31:13 refers to an action ex delicto and gives the landowner the statutory authority to sue for damages in tort, such as trespass. Cf. State v. Jefferson Island Salt Mining Co., 163 So. 145 (1935), and the official comments to R.S. 31:13. The present suit is for unpaid royalties, not for damages in trespass or the like. It follows that R.S. 31:13 is not applicable and cannot be used as authority for the Department's claim in this suit.
Obviously, the State is the owner of the Mississippi River bottom, and, as owner, has the right, through the Department, to bring an action under R.S. 31:13 for damages for unauthorized removal of sand. The state as owner now may also obtain royalties and penalties through the Department under R.S. 56:2011, et seq. These statutes were added by Acts. 1986, No. 845, Sec. 1, the purpose of which was in part to "provide" for royalties, penalties, etc. Prior to these statutes, the State certainly had at least the same right as any other landowner to contract, through the Department, with another party on the subject of royalties. The Department failed to prove its entitlement to collect royalties from either James, Bonura, or Kenner Land in the present case in the absence of a specific agreement or contract. Furthermore, even if the action had been one sounding in damages, the claim has prescribed.
The Department was created and established as provided in LSA-R.S. 56:1. LSA-R.S. 36:602(A) states, in pertinent part:
The Department of Wildlife and Fisheries is created and shall be a body corporate with the power to sue and be sued.
Our Supreme Court discussed the issue of prescription relative to certain departments within the state in State, Etc., v. City of Pineville, 403 So.2d 49 (La.1981) and held:
... the "State," for the purposes of the constitutional immunity from prescription, does not include a state agency which is a body corporate with the power to sue and be sued and which, when vested with a cause of action, is the sole party capable of asserting it. Regardless of its status as an instrumentality of the state, such an agency remains a distinct legal entity subject to claims of prescription except where the law provides otherwise.
See also Governor's Sp. Com'n. on Educ. v. Dear, 532 So.2d 902 (La.App. 5 Cir.1988).
In the present case, James performed the last of the dredging at issue in 1985. The petition in this case which initially alleged sums due under the dredging contracts and added Kenner Land as a party defendant was filed on January 14, 1986. The record shows that service was effected on January 31, 1986. The petition of intervention was filed on September 11, 1987, more than one year after the alleged trespass.
La.C.C.P. art. 1067 provides as follows:

*1386 An incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and is filed within ninety days of date of service of main demand or in the case of a third party defendant within ninety days from service of process of the third party demand. [Emphasis supplied]
The intervention is still barred by prescription under the above article because it was clearly not filed within ninety days of the date of service of the main demand.
Therefore, it was error for the court to grant judgment in favor of the Department and that portion of the judgment must be annulled and set aside. Because of this finding, we need not consider the final assignment.
For the foregoing reasons, the judgment of the trial court in favor of James and against Kenner Land only is affirmed; the judgment of the trial court in favor of the Department is annulled and set aside and the petition for intervention is dismissed. Costs of the appeal are taxed to James.
AFFIRMED IN PART AND ANNULLED AND SET ASIDE IN PART.
NOTES
[1] Plaintiff Exhibit # 1.
[2] LSA-R.S. 56:2011 and 2012 read as follows:

Sec. 2011. Permit to dredge, royalties
A. No person, firm, or corporation shall dredge fill sand or fill material from the water bottoms of this state without first obtaining a permit from the Louisiana Department of Wildlife and Fisheries, at a fee not to exceed one hundred dollars. The department shall act on the permit application either favorably or unfavorably within a period of thirty working days.
B. The Louisiana Wildlife and Fisheries Commission shall set, by rule, a schedule of royalty payments for said fill sand and fill material; and shall require a bond to insure the permittee's performance under the permit.
Sec. 2012. Violations and penalties, injunctive relief
A. The commission may assess a civil penalty of not more than one thousand dollars for each violation of the provisions of this Chapter or of the rules and regulations adopted by the commission. Each day on which a violation occurs shall be considered a separate offense.
B. Additionally, the commission may assess damages in an amount not to exceed the estimated fair market value of the fill sand or fill material dredged by any person without a valid permit or otherwise in violation of this Part or the rules and regulations of the commission.
C. Penalties and damages may be assessed only by a ruling of the commission based on an adjudicatory hearing held in accordance with the provisions of the Administrative Procedure Act; however, the permittee has the option to waive the adjudicatory hearing upon payment of the penalties and damages assessed by the department and upon his providing evidence of compliance.
D. The secretary may institute civil proceedings to enforce the rulings of the commission in the district court for the Nineteenth Judicial District.
E. The secretary may institute civil proceedings seeking injunctive relief to restrain and prevent the violation of the provisions of this Chapter, or of the rules and regulations adopted by the commission, in the Nineteenth Judicial District Court.
[3] LSA-C.C. 450 states in pertinent part:

Public things are owned by the state or its political subdivisions in their capacity as public persons.
Public things that belong to the state are such as running waters, the waters and bottoms of natural navigable water bodies, the territorial sea, and the seashore.