562 So.2d 914 (1990)
T.L. JAMES & COMPANY, INC.
v.
KENNER LANDING, INC. and Francis P. Bonura.
No. 89-C-2617.
Supreme Court of Louisiana.
June 4, 1990.
*915 William J. Guste, Atty. Gen., Gary L. Keyser, David C. Kimmel, Asst. Attys. Gen., Herman C. Hoffmann, Jr., Daria L. Burgess, Hurley & Hoffmann, New Orleans, for T.L. James & Co., Inc., relator/intervenor/defendant-respondent.
Robert G. Creely, Michael F. Somoza, Amato & Creely, Gretna, for Kenner Landing, Inc. and Francis P. Bonura, plaintiff-applicant.
DENNIS, Justice.[*]
We are called upon to decide whether the state may recover tort damages from a dredging company for trespass and unauthorized dredging of materials from a state waterbottom despite the state's failure to demand such relief in its pleadings. In its pleadings, the state prayed only for royalties on the materials taken and the trial court awarded the state the amount demanded for royalties. The Court of Appeal reversed because the state had failed to prove a contract or other legal basis for the state to share in the products or profits from the dredging operations. Moreover, the appeals court rejected the state's argument that the judgment should be affirmed as an award for damages for trespass and unauthorized removal of materials because the state had not demanded damages in its pleadings. T.L. James & Co. v. Kenner Landing, Inc. 550 So.2d 1378 (La.App. 5th Cir.1989). We affirm for somewhat different reasons.
Except in the case of a default judgment, every final judgment must grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings. La.C.C.P. art. 862. However, when the party's failure to request a particular form of relief, and the party's trial conduct, improperly and substantially prejudice its adversary's presentation of a defense, it is not "entitled" to relief under this rule. In the present case, the state's *916 conduct of its cause, including its limited demand for royalties in its pleadings, its pretrial consent to confine the issues to royalties, and its introduction of evidence only as proof of royalties unfairly deprived the dredging company of an opportunity to prepare and assert potential protective and mitigative defenses to a tort action.
We granted the state's application because it appeared that the Court of Appeal had erred by vacating a damage award merely because damages were not demanded in pleadings and by holding alternatively that the state's claim had prescribed. T.L. James & Co. v. Kenner Landing, Inc., 550 So.2d 1378 (La.App. 5th Cir.1989). After a full review of the case, however, we conclude that the Court of Appeal judgment should be affirmed on modified grounds, i.e., because of the state's failure to demand tort damages and the substantial and improper prejudice to its adversary's defense caused by the state's pretrial and trial conduct. Hence, we set to one side without deciding the prescription issue and expressly declare that the Court of Appeal opinion shall have no precedential effect in this regard.
The state intervened in a suit by the dredging company, T.L. James & Company, against Kenner Landing, Inc. and Francis Bonura, in which the dredging company alleged that these persons had agreed to pay for materials that it had dredged for them from the Mississippi river. The state asserted that it was entitled to a royalty of twenty cents per cubic yard on the dredged materials from either or both of the original parties. The state demanded in its petition of intervention to be paid a dollar amount calculated by multiplying this royalty rate times the total volume of materials dredged. In response to interrogatories, the state answered that the object of its suit was to recover royalties, not severance taxes. In a pretrial statement, filed in compliance with the trial court's order under La.C.C.P. Article 1551, the state asserted that the purpose of its intervention was to collect royalties on the materials dredged or to recover the amount by which the other parties had been unjustly enriched. Immediately prior to trial, in order to avoid the granting of a continuance to Kenner Landing and Bonura, the state agreed to withdraw its unjust enrichment claim and to "proceed based on [its] original petition of intervention."
At trial, the state failed to introduce any evidence of a contract by which the state and the dredging company agreed that the state should receive royalties on the materials dredged. The state called one witness, an auditor, who testified to the royalty rate and delinquent payment penalty the state had bargained for in previous dredging contracts; and the auditor used that rate to calculate the royalties that T.L. James would have owed the state had the parties entered a royalty agreement. But the testimony by the auditor also revealed clearly that the state and T.L. James had not entered any contract or agreement with respect to the dredging in question.
Furthermore, the state did not introduce any evidence as to damages or indicate that it would seek to rely on any other party's evidence to prove damages. In confirmation of the state's intention, the state's witness testified that the object of the state's intervention was to collect the royalties he calculated to be due.
After the trial on the merits, the trial court rendered judgment in favor of T.L. James & Company against Kenner Land Development, Inc. but rejected the dredging company's demand that Francis Bonura be held personally liable. The trial court further rendered judgment in favor of the state as intervenor against the dredging company for an amount equal to the royalties demanded by the state. The dredging company appealed, and the Court of Appeal affirmed in part and reversed in part, upholding the trial court's decree exonerating Francis Bonura but annulling the state's judgment against T.L. James & Company. The Court of Appeal rejected the state's argument that the judgment should be affirmed as an award for damages for trespass and unauthorized removal of materials. In doing so, the appeals court merely stated that "[t]he present suit is for unpaid royalties, not for damages in trespass or the like." T.L. James & Co. v. Kenner *917 Landing, Inc., 550 So.2d 1378, 1385 (La. App. 5th Cir.1989) (Emphasis in original). Only the state applied for and was granted a writ of certiorari. T.L. James & Co. v. Kenner Landing, Inc., 556 So.2d 26 (La. 1990). We affirm because the state's demand for damages was not merely tardy, but also, in combination with its pretrial and trial conduct, unfairly prejudicial to its adversary's ability to present tort action and damage defenses.
Except in the case of a judgment by default, Article 862 of the Louisiana Code of Civil Procedure provides that "a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings...." Article 862 is virtually identical to its source, the second sentence of Rule 54(c) of the Federal Rules of Civil Procedure. The second sentence of Federal Rule 54(c) provides:
Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.
Federal Rule 54(c) has been frequently and liberally applied. 6 Moore's Federal Practice ¶ 54.62 (2d ed. 1989). In brief, the rule provides that it is the duty of the court to grant the relief to which a party is entitled irrespective of the prayer for relief in the pleadings. Id. If defendant has appeared and begun defending the action, adherence to the particular legal theories of counsel that may have been suggested by the pleadings is subordinated to the court's duty to grant the relief to which the prevailing party is entitled, whether it has been demanded or not. 10 Wright, Miller & Kane, Federal Practice and Procedure § 2664 (2d ed. 1983). When the failure to request a particular form of relief prejudices the presentation of the defense, however, relief under Rule 54(c) may be inappropriate. Moore, supra; Wright, Miller & Kane, supra.
In Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), an employment discrimination suit in which plaintiff did not seek back pay until after the complaint for injunctive relief had been filed and a trial thereon was had, the Supreme Court held that although Rule 54(c) permits the court to award any relief to which the party is entitled, a party may not be "entitled" to relief if its conduct of the cause has improperly and substantially prejudiced the other party. In remanding the case, the court noted that the respondents had been not merely tardy, but also inconsistent, in demanding backpay, but concluded that whether the petitioners had been prejudiced, and whether the respondents' trial conduct had been excusable were questions open to review below.
In Atlantic Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712 (4th Cir.1982), the Court of Appeals, in a diversity action brought under the North Carolina Unfair Trade Practices Act, held that the district court did not abuse its discretion in refusing to treble the jury award, where the complaint gave no warning to defendant seller that successful prosecution of the action could result in an award of treble damages. The court concluded that plaintiff's conduct of seeking the unusual remedy of treble damages for the first time after verdict, while seeking only punitive damages in its pleadings and throughout trial, had unfairly denied the defendant and its counsel the opportuntiy to make a realistic appraisal of the case so that their settlement and litigation strategy could be based on knowledge and not speculation.
For other decisions to the same effect, see Stewart v. Furton, 774 F.2d 706 (6th Cir.1985) (Trial court's refusal to assess damages against trailer home owner was not an abuse of discretion, even though he violated Fair Housing Act, where owner proceeded to trial without his attorney present based on alleged assurances and the absence of a prayer for damages against him in plaintiff's complaint); United States v. Munoz, 746 F.2d 1389 (9th Cir.1984) (District court's refusal to grant relief in tort was not error, where contract claim was pleaded and not tort, and plaintiff's counsel insisted that he was proceeding *918 only with the contract claim); International Harvester Credit Corp., v. East Coast Truck, 547 F.2d 888 (5th Cir.1977) (Trial court abused discretion in granting rescission of contract to franchisee who not only failed to plead, but specifically disavowed, the remedy of rescission, thereby depriving franchisor of fair opportunity to urge potential defenses to recission).
We see no reason that we should not follow the precepts of interpretation established by these precedents in construing and applying Article 862. This court has frequently given careful consideration to decisions of federal courts interpreting the federal sources of many of our procedural rules. Scott v. Hospital Service Dist. No. 1, 496 So.2d 270 (La.1986); Parish Nat. Bank v. Lane, 397 So.2d 1282 (La.1981); Ogea v. Jacobs, 344 So.2d 953 (La.1977); Madison v. Travelers Ins. Co., 308 So.2d 784 (La.1975). The federal jurisprudence under 54(c) is peculiarly relevant to interpretations of article 862 of the Louisiana Code of Civil Procedure since both were adopted for the same reason, i.e., to abrogate the "theory of the case" doctrine. La.C.C.P. art. 862, comment (a) and (b); Cox v. W.H. Heroman & Co., 298 So.2d 848 (La.1974). Indeed, the cases interpreting the rule so as not to permit it to be applied improperly and unfairly to the prejudice of parties tend to promote the goals of the rule itself, viz. to enable all litigants to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation. See Advisory Committee Notes to 1970 Amendment, Fed.Rule Civ.Proc. 26(b)(2); Atlantic Purchasers, supra at 217, n. 6.
Applying the foregoing precepts, we conclude that the state is not entitled to recover damages for tort because it not only failed to demand this relief in its pleadings but also acted inconsistently with such relief at every stage of the trial proceedings and thereby improperly and substantially prejudiced the other parties in the preparation and assertion of potential defenses. From the declarations of the state's petition of intervention, answers to interrogatories, pretrial statement, and oral pretrial stipulation, as well as the probative tendency of the state's evidence, plus the absence of any express or implied demand for damages prior to or during trial, the dredging company reasonably could have concluded that it needed to defend only against a suit to collect royalties. Consequently, the dredging company, reasonably believing the suit was grounded in royalty only, and, despite its due diligence, was denied the opportunity to make a realistic appraisal of the case and base its settlement and litigation strategy on knowledge rather than speculation, and the chance to develop potential protective and mitigative defenses. See, e.g., Wetherbee v. Railroad Lands Co., 153 La. 1059, 97 So. 40 (1923) (Plaintiffs who did not resort to proper legal remedies before oil was discovered, permitted defendants to develop the property, would be required to reimburse defendants for their expenditures); Jim Walter Corp. v. Hunt, 183 So.2d 91 (La.App. 1st Cir.1965), writ denied 248 La. 1102, 184 So.2d 25 (1966) (Permission given by father for son to use road, thus father could not bring action in trespass against those who had obtained the son's consent to use the same road); compare Sanders De Hart v. Continental Land & Fur Co., 205 La. 569, 17 So.2d 827 (1944) (In action for trespass on land for value of clam shells removed therefrom, in the absence of bad faith, landowner is only entitled to recover the value of the clam shells occurring in their natural state) with State v. Jefferson Island Salt Mining Co., 183 La. 304, 163 So. 145 (1935) (Measure of damages in bad faith trespass action is the value of the material taken without deducting expenses incurred in production). See also F. Harper, F. James, & O. Gray, The Law of Torts § 1.11 (2d ed. 1986); F. Stone, Tort Doctrine, Louisiana Civil Law Treatise § 217 F. (1977).
The state does not dispute the proposition that under general law the consent of the land owner and the dredging company is required to establish the right to remove minerals or materials and the right to collect royalties on the authorized removal. See Texas Co. v. Fontenot, 200 *919 La. 753, 8 So.2d 689 (1942); Whitehall Oil Co. v. Eckart, 197 So.2d 664 (La.App. 3d Cir.1966), rev'd sub nom. on diff. grounds, Gardner v. Boagni, 252 La. 30, 209 So.2d 11 (1968). But the state contends that it was not required to prove a contractual basis for its right to collect royalties for material dredged from state lands because its right is provided for by special statute. It is true that La.R.S. 56:2011 et seq. was added by Act 845 of 1986 and that this statute provides that a permit is required to dredge on the state's waterbottoms, that the Department shall set, by rule, a schedule of royalty payments required under the permit, that, if, a permit is not secured, or if the rules or regulations adopted by the Department are violated, the Department's commission may assess a civil penalty, and damages, not to exceed the fair market value of the material dredged, and finally, that such penalties and damages must be the subject of a ruling of the Department's commission based on an adjudicatory hearing held in accordance with the provisions of the Administrative Procedure Act. La. R.S. 56:2011, 2012. But, as the Court of Appeal correctly indicated, it is clear that there was no legislative aim for this act to apply retrospectively to the dredging of materials that occurred prior to its effective date. Moreover, it is also clear that the executive branch did not actually intend to proceed under this new law in the present case because it has not complied with the statutory procedures and requirements.
For the reasons assigned in this opinion, the Court of Appeal judgment is affirmed.
AFFIRMED.
SHORTESS, J. Pro Tem., dissents and will assign reasons.
SHORTESS, Justice pro tem., dissenting.
In my opinion, the state's petition of intervention adequately stated a claim to recover for the illegal removal of state-owned waterbottoms under any available theory of recovery. The state alleged that T.L. James "pumped or otherwise removed from the Mississippi River sand and/or fill material owned by the State and located on state owned waterbottoms." The state also alleged the exact amount of material removed and the period of time during which the material was removed. T.L. James received adequate notice of the nature of the state's claim and was not prejudiced by the manner in which the state expressed its claim. In its petition, the state calculated its loss in terms of a standard royalty of twenty cents per cubic yard for the removal of sand or fill material from state waterbottoms. The petition, however, did not allege that T.L. James had a contractual or statutory obligation to pay a royalty to the state.
T.L. James attempted to clarify the state's position through written interrogatories. In one of the interrogatories, T.L. James asked whether the sums sought to be collected from T.L. James were a severance tax or a royalty. The state responded, "The amount demanded in the State's suit is considered to be the cost of acquiring a permit to dredge and/or remove fill material from the State's waterbottoms. In that sense, it is considered a royalty." Far from misleading T.L. James, the response to interrogatories indicated that the state was seeking to recover the monetary loss caused by the illegal dredging, and that this monetary loss was equivalent to the amount the state would have received in royalties for the right to take state waterbottoms. The response does not imply that the state intended to limit itself to a claim for the collection of royalties owed.
The trial court permitted the state to recover on its intervention. I don't think it was clearly wrong in doing so, and would reinstate its judgment.
I respectfully dissent.
NOTES
[*] Judge Melvin A. Shortess of the First Circuit Court of Appeal participated in this decision as Associate Justice Pro Tempore.