BARRY, Judge.
Jeanne Abraham and Wilson P. Abraham Construction Corp. appeal a judgment which rescinds Ms. Abraham’s sale of a townhouse and an adjoining vacant lot based on redhibition.
FACTS
On March 26, 1982, Mr. and Mrs. James Robinson purchased a townhouse from Ms. Abraham for $64,000, financed by a 100% mortgage. In a separate act of sale on the same day Ms. Abraham sold the Robinsons an adjacent vacant lot for $200 cash and an $11,800 non-interest bearing note.
The townhouse was built in 1981 by Wilson P. Abraham Construction Corp. Ms. Abraham's father, Wilson P. Abraham, is president and owner of Abraham Construction. The Robinsons’ townhouse differed from other townhouses built by Abraham Construction because it had a one story den with a flat roof. Ms. Abraham lived in the townhouse for approximately ten months before she sold it to the Robinsons. Abraham Construction gave the Robinsons a one year builder's warranty which expired March 26, 1983.
During a heavy rainstorm in July, 1982 the Robinsons noticed water leaking through the ceiling where the den joined the main house. They called Mr. Abraham and he sent a roofer who spread hot tar on the roof. The roof continued to leak when it rained.
The Robinsons listed a number of complaints by certified letter to Mr. Abraham. Some problems were rectified but the roof leak continued.
The Robinsons retained an attorney who, on March 25, 1983, filed but did not serve a redhibition suit against Ms. Abraham and Abraham Construction. The Robinsons sought to rescind the purchase of the townhouse, $15,500 in property damages, plus attorney fees. Ms. Abraham and Abraham Construction retained an attorney who contacted the Robinsons’ attorney. Abraham Construction continued their efforts to remedy the problems.
In April, 1983 Abraham Construction performed additional roof work and replaced water-damaged sheetrock. The record suggests that the construction company performed repairs during the summer of 1983, but neither Mr. or Mrs. Robinson signed work orders.
In June, 1983 the Robinsons’ promissory note for the vacant lot became delinquent and Ms. Abraham demanded payment in full. The attorneys corresponded but neither side took legal action.
Correspondence suggests that the parties were trying to resolve the dispute amicably. A July 1,1983 letter from the Abra-hams’ attorney confirms a June 30th telephone conversation in which the attorneys agreed that their clients would refrain from further legal action pending attempts to resolve the dispute. The Abrahams requested an itemized list of defects and stated that the construction company would remedy any defect covered by its warranty. In follow-up letters Abraham Construction *1343 repeatedly asked the Robinsons to specify any problem. On September 21, 1983 the Abrahams made their last request but the Robinsons never responded.
Mr. Robinson testified that after suit was filed (March 25, 1988) he brought a written list of complaints to Mr. Abraham’s office, but he didn’t know the date. The Abrahams said that Mr. Robinson provided the list in February, 1983.
Abraham Construction did not attempt repairs after September 21, 1983 and neither side pursued their legal claims. Ms. Abraham and the construction company were not served with the redhibition suit and the Robinsons made no further note payments. Abraham Construction states that it. assumed the matter was resolved.
Mr. and Mrs. Robinson testified that the roof continued to leak and eventually they used containers to catch water. The den furniture was damaged, the ceiling collapsed, and the roof’s beams rotted due to exposure. Part of the den’s roof caved in and separated from the main house which created an opening.
The Robinsons continued to live in the house and made no attempt to have the roof repaired. They testified that they moved out in June, 1988 because the house was unfit for habitation. They did not explain why they lived in the house almost six years without repairing the roof or proceeding with their redhibition suit.
The matter remained in limbo until December, 1987 when the Robinsons had the petition served on Ms. Abraham and Abraham Construction. Ms. Abraham then filed suit on the unpaid note. The suits were consolidated.
The trial court denied Ms. Abraham’s exception of want of amicable demand.
Expert testimony established that the den’s roof was improperly joined to the two story townhouse. The metal flashing where the flat roof met the brick rear wall was not watertight. Water leaking through that seam rotted the roof beams which caused the roof to cave-in. The defense introduced testimony that it would have been relatively easy to remedy the problem before the damage worsened.
The trial court rendered a judgment which rescinded the sale of the house and vacant lot. The Robinsons did not pray for recision of the lot sale, but the court reasoned that the interest free sale of the lot was an incentive to purchase the townhouse. The court held Ms. Abraham and Abraham Construction liable for general damages of $15,200 and attorneys’ fees of $3,500 under C.C. Art. 2545.
Ms. Abraham and Abraham Construction were granted leave to appeal on December 19, 1989. On February 12, 1990 the trial judge granted plaintiffs’ ex parte motion and amended the judgment to include the legal description of the townhouse and vacant lot and awarded legal interest from date of judicial demand until paid.
ATTORNEY/CLIENT PRIVILEGE
The Abrahams assert that the trial court erred by refusing to allow them to question the Robinsons’ attorney concerning the failure to prosecute this lawsuit between 1983 and 1987.
The Robinsons introduced into evidence a letter from Clyde Martin, their former attorney.[1] The Abrahams sought to cross-examine Martin as to whether he and Ed *1344 win Schlesinger, the Abrahams’ attorney, had agreed not to proceed with the litigation and why he did not respond to Schlesinger’s inquiries.
The trial court refused to allow the questions based on attorney-client privilege.
Disclosure at trial of only part of a privileged communication is deemed to be a waiver of the privilege with respect to any information on the same subject matter. Accordingly, a privilege holder who testifies or permits his confidant to testify about a privileged communication with his attorney waives his right' to invoke the privilege as to cross-examination or testimony of others with regard to communications on the same subject. The introduction into evidence of a document which discloses a privileged communication also waives the privilege against testimony or production of further documents disclosing communications on the same subject. Smith v. Kavanaugh, Pierson & Talley, 513 So.2d 1138, 1144 (La.1987).
The introduction into evidence of Martin’s letter to the Robinsons constituted a waiver of the attorney/client privilege. The trial court’s denial of cross-examination was clearly wrong.
ESTOPPEL AND LACHES
The Abrahams argue that the Robinsons are estopped from asserting any claim due to the agreement of counsel not to proceed pending an attempt to resolve the dispute.
The Abrahams suggest that the 53 months of silence led them to believe the matter had been resolved and that during that time the property substantially deteriorated. They claim that most of the damage could have been avoided if they had been made aware of the need for additional repairs.
Since we find it was error to deny cross-examination of Martin, we pretermit the issues of estoppel and laches.
RECISION OF THE LOT SALE
The Abrahams argue that the trial court erred by rescinding the sale of the lot because the Robinsons never alleged a defect in the sale or requested that the sale be rescinded. They argue that any consideration of recision is barred by prescription.
The Robinsons’ petition does not mention the vacant lot. After being served with the redhibition suit, Ms. Abraham filed a separate suit to collect on the Robinsons’ promissory note. The Robinsons answered that the note had prescribed and that Ms. Abraham was estopped from filing suit because she agreed not to sue on the note. In the alternative, the Robinsons said any liability on the note should be an offset in their redhibition suit. They did not request that the price of the lot be reduced or that the sale be rescinded.
La.C.C.P. Art. 862 provides that, except in the case of a default judgment, every final judgment must grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the pleadings.
The Supreme Court recently considered Art. 862 and found that a party is not “entitled” to relief when its failure to request a particular form of relief and its conduct of the trial improperly and substantially prejudiced its adversary’s presentation of a defense. T.L. James & Company, Inc. v. Kenner Landing, Inc., 562 So.2d 914 (La.1990).
In James the lower court awarded tort damages even though plaintiff had prayed for royalties, filed a pre-trial statement asserting that the suit was to collect royalties, and did not introduce any evidence as to damages or indicate that it would rely on any other party’s evidence to prove damages. The Supreme Court held that the defendant was unfairly deprived of an opportunity to prepare and assert potential protective and mitigating defenses to the tort action. James, supra, at 916.
The Robinsons did not introduce any evidence to support a recision. Ms. Abraham was prejudiced because she was not on notice that it was necessary to assert a defense against recision.
Under these circumstances there is no basis to rescind the lot sale. James, su *1345 pra. See also, Littleton v. Littleton, 514 So.2d 248 (La.App. 5th Cir.1987).
FAILURE TO COMPEL EXPERT TESTIMONY
The Abrahams argue that the trial court erred by failing to compel testimony from Honoray Hilliard, a roof expert retained by the Robinsons. They argue that Mr. Hilliard’s report contradicts the testimony of Bruner Mallet, the Robinsons’ expert.
The Robinsons retained both Mr. Hilliard and Mr. Mallet to inspect their roof. The men were listed on the Robinsons’ witness list as expert witnesses. The Abrahams were provided with their reports. The Rob-insons only called Mr. Mallet to testify. The Abrahams subpoenaed Mr. Hilliard as an adverse witness and to produce all Internal Revenue Service forms 1099 and W-2 and tax returns for the years 1985 forward and all employment records and business, occupational and contractor’s licenses held by him or Hilliard Roofing Company from 1985 to the present.
Mr. Hilliard did not appear at trial or produce the subpoenaed documents. The court refused to compel Mr. Hilliard to testify and stated that it would not assess any adverse inference from Mr. Hilliard’s failure to testify because the Robinsons had submitted Mr. Mallet as an expert. Mr. Hilliard’s inspection report is in the record as a proffer.
We have reviewed Mr. Hilliard’s report as well as Mr. Mallet’s testimony and report. Mr. Hilliard’s report is consistent with the report and testimony of Mr. Mallet. Both men found the roof defective.
Mr. Hilliard’s report states that the roof was “installed improperly and below industry standards.” Mr. Hilliard noted three specific defects: (1) the metal siding and flashing were improperly installed and water could leak through; (2) the roof was mopped with an inferior two-ply roofing system; and, (3) the lower roof was constructed so that water would run into the seam where the den’s roof connected to the back wall of the main house.
Mr. Mallet said the roof was three-ply, however, he noted that the roof was “pulling apart, and has many splits, blistering, and low soft areas.” The roof was not coated or sealed with emulsion. Mallet found that a gravel guard was improperly installed, causing the roof to hold water. The roof cave-in resulted from improper construction.
The reports describe the problems in slightly different ways. The only significant difference is that Mr. Hilliard thought the roof was constructed of two-ply rather than three-ply material. Mr. Hilliard’s report is more damaging to the Abrahams.
The Abrahams were not prejudiced by the non-appearance of Mr. Hilliard. The trial court did not err by proceeding without Mr. Hilliard.
SELLER’S KNOWLEDGE OF VICE
Ms. Abraham argues that the Rob-insons did not allege that she had specific knowledge of a roof problem prior to selling the townhouse or that she was a “bad faith” seller. Therefore, she should have been given an opportunity to repair the property before the Robinsons filed suit.
Ms. Kathleen Lucien, a neighbor, testified that the roof of the townhouse leaked on several occasions when Ms. Abraham lived there. Ms. Lucien assisted in cleaning up water on one occasion.
Ms. Abraham did not appear at trial.
The evidence supports the determination that Ms. Abraham was aware of the roof problem before the sale. The Robinsons were not required to tender the property for repair prior to filing suit. La.C.C. Arts. 2520 and 2545.
AMENDMENT OF THE JUDGMENT
The Abrahams correctly argue that the trial court lacked jurisdiction to amend the judgment to include legal interest after the order of appeal was granted. La.C. C.P. Art. 2088.
Unless a new trial is granted, a final judgment may be amended by the trial court only to alter the phraseology or to correct errors of calculation but not sub *1346 stance. La.C.C.P. Art. 1951. An award of interest is a substantive amendment.
The trial court erred by amending the judgment to include legal interest.
ASSIGNMENT OF NOTE
The Abrahams claim that the court erred by refusing to consider evidence related to Ms. Abraham’s assignment of the note to Abraham Construction and by refusing to admit the lost note bond into evidence.
The face amount of the note was $11,800 with payments of $200 per month. Mr. Robinson admitted there was a balance due on the note because he only made thirteen payments.
The note was not produced. The Abra-hams proffered an authentic act dated June 29, 1989 transferring the note from Ms. Abraham to Abraham Construction and a lost note bond dated November 30, 1989.
The court said that the suit on the note named Ms. Abraham as holder and payee. The court refused to accept the proffered evidence and testimony of Mr. Abraham to prove that Abraham Construction was the owner of the note.
The trial court ruled that the testimony of Ms. Abraham or the current holder of the note was required to prove the balance due. Mr. Abraham was not permitted to carry that burden.
The trial court was clearly wrong by refusing to allow Mr. Abraham to testify concerning the ownership of the note, the balance due, and why Abraham Construction was not substituted as plaintiff in that suit.
RECONVENTIONAL DEMAND
The Abrahams argue that the trial court erred by severing their reconventional demand for attorney’s fees and costs of defense.
The reconventional demand was filed on November 13, 1989, only two weeks before trial. The Abrahams did not obtain leave of court to file the demand. La.C.C.P. Art. 1033. The trial court did not err by ordering that the claim be tried separately.
This assignment is without merit.
BIAS OR PREJUDICE OF THE TRIAL COURT
The record does not support the allegation that the trial court was prejudiced.
FORECLOSURE OF PROPERTY
The Abrahams submit that on December 20, 1990 (after rendition of judgment) the Government National Mortgage Association acquired the townhouse in a foreclosure proceeding. They argue that this Court should dismiss the Robinsons’ demand for redhibition because they do not own the property.
The Robinsons reply that this question is not before the Court because evidence of the foreclosure is not in the record. They suggest that they could redeem the townhouse from the lender for tender to the Abrahams.
This Court is precluded from considering matters not in the record. See Bullock v. Commercial Union Insurance Company, 397 So.2d 13 (La.App. 3rd Cir.1981).
We note that if recision of the house sale is impossible because the Robin-sons no longer own the property, they may be entitled to a reduction of the purchase price. La.C.C. Art. 2543. Bayou Rapides Lumber Co. v. Davies, 221 La. 1099, 61 So.2d 885 (1952); Lacey v. Baywood Truck and Machinery, 381 So.2d 863 (La.App. 1st Cir.1980), aff'd. sub nom. Capital Bank and Trust Co. v. Lacey, 393 So.2d 668 (La.1980).
For the above reasons,
We affirm: the refusal to compel Mr. Hilliard’s testimony; the determination that Ms. Abraham knew about the defective roof prior to the sale; and severance of the reconventional demand.
We reverse: the recision of the sale of Lot 14 and Lot 15, Square A, Skyview Subdivision, subject to the hearing on remand; the amount of general damages *1347 subject to the evidence on remand; the ruling that Clyde Martin was not subject to cross-examination; the amendment of the judgment to include legal interest; and the exclusion of evidence concerning ownership of the note.
This matter is remanded: to determine the amount of damages, if any, that occurred due to the Robinsons’ failure to mitigate their damages and the “use value” of the house, such amount(s) to be offset against any general damage award; ownership of the note and its unpaid balance; for cross-examination of Clyde Martin to determine whether estoppel and laches are applicable; and to determine the status of the townhouse.
The award of attorney’s fees, if any, shall be determined after the hearing on remand.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.

.
"July 5, 1983
Mr. and Mrs. James Robinson
4422 Cessna Court
New Orleans, Louisiana 70126
Dear Mr. and Mrs. Robinson:
This is to advise you that as a result of my letter to Edwin Schlesinger, attorney for Mr. Wilson Abraham, I have received a letter from him dated July 1, 1983. It appears that now they wish to resolve the problems with your home in order to avoid any litigation of the lawsuits in this matter.
According to Mr. Schlesinger’s letter he is requesting that I send him an itemized list of your complaints in this matter. I am therefore requesting that you make up this list as soon as possible documenting each and every complaint and then make an appointment to come into the office so that we can discuss your list before I send it [sic] Mr. Schlesinger. Sincerely,
Clyde P. Martin, Jr.”